WALTER H. BRISCOE v. HENDERSON LIGHTING AND POWER COMPANY.

(Filed 14 October, 1908.)

**Trespassers—Personal Injury—Children—Invitation, Expressed or Implied—Pleadings—Demurrer.**

Owners in possession of lands are not liable to trespassers for injuries received from conditions arising from the lawful use thereof for manufacturing or other lawful purposes; and a complaint alleging that the electrical plant on defendant's premises was alluring or attractive to boys, and the plaintiff, a boy of thirteen years of age, was injured while going through an opening between two buildings on defendant's lands by falling into a well of hot water negligently covered over, used in the conduct of defendant's business, and there is no allegation that boys usually passed the place where the injury was occasioned or were in the habit of frequenting the defendant's premises on account of its attractiveness, or that invitation, expressed or implied, had been extended by defendant, the plaintiff was a trespasser, and defendant is not responsible for his act thereof, and a demurrer will be sustained.

ACTION heard upon demurrer to the complaint, by *Cooke, J.,* at May Term, 1908, of VANCE.

The plaintiff, suing by his next friend, alleges that the defendant is a duly chartered corporation, engaged in supplying light to the inhabitants of Henderson, N. C., and heat and power to some of them; that the defendant has and operates its light and power and heating plant on Spring Street, very near Main Street, of the town of Henderson, in a populous part of the said town, where there is much passing; that the defendant has and operates a large, attractive brick building, very large dynamos, shaftings, and pulleys, engines and boilers, and by means of large doors and windows these machines may be seen from the street, the railway tracks and the alley near by; that Spring Street crosses Main Street at a point 114 feet from defendant's said plant; that defendant's manager, Mr. Woodsworth, lives on the corner made by the intersection of said streets, his residence lot being 61½ feet on Main Street and 114 on Spring Street; that next to his lot is the Grand Theatre, on a lot 54 feet on Main Street and running back 110 feet; that the light and power plant extends from Spring Street across or along the rear of these two lots, and the space between the power plant building and the rear of Mr. Woodsworth's lot, which is enclosed by a high fence, and the rear wall of the Grand Theatre forms an alley-way about .... feet wide, extending from Spring Street, at a point near the Southern depot, to an open lot, which extends around the north side of the theatre building to Main Street; that this open alleyway is the property of, or in the possession and control of, the defendant; that the said theatre building and the residence of the said manager are heated or warmed by hot air, or steam, or hot water, supplied by pipes extending underground from engines in defendant's power plant across said alley into said buildings; that just on the edge of said alleyway, and next to the manager's fence and the theatre building, are three small wells or receptacles șev-

eral feet deep, into which the hot water from the heating pipes of said plant escapes; that these wells are filled or nearly filled all of the time with very hot water, and that this condition existed at the time hereinafter referred to; that the defendant, in the month of October, 1907, unlawfully, negligently, carelessly and wrongfully permitted said alleyway to remain open in immediate proximity to Spring Street, and did unlawfully, wrongfully and negligently fail to cover up securely or in any manner guard one of said hot water wells, but unlawfully covered or permitted to be covered the said well with a thin and weak covering, which the plaintiff believes was a banana case; that the plaintiff, being only a small boy, with the intelligence usual in boys of his age, in passing through said alleyway at said time, did not and could not see the well or hole of hot water aforesaid, or know that it was under the thin, weak piece of wood, and, not having been guarded or cautioned against it, stepped upon the thin wood covering, which instantly gave way and precipitated plaintiff into said hole or well of hot water, which instantly, before he could extricate himself, burned and scalded the plaintiff's right foot and leg, so that the skin and parts of the flesh came off, and the remaining flesh was lacerated and wounded and made dangerously sore from the bottom of the foot to three inches above the knee, and the plaintiff suffered great pain and anguish of body for a long time and was put to great cost and expense for nursing and for medicines and for attendance and services of a physician, to the plaintiff's damage of $2,000.

The plaintiff further alleges that the entrances to the engine rooms and the power house and the theatre were in said alley, and the machinery, being constantly in motion, was calculated to attract and allure boys and others to see the machinery and what may be seen in the theatre, and the defendant was negligent and at fault in permitting said wells to remain in said alleyway, uncovered or defectively covered, and such neg-

ligence was the direct and proximate cause of the plaintiff's great injury and suffering.

The defendant demurred to the complaint, for that it did not state facts sufficient to constitute a cause of action, in that it did not allege or appear:

1. That the defendant owed the plaintiff or the public the duty of keeping said alleyway (so-called) on or across its own premises open or free from obstruction, so as to be used by the public, or that defendant owed the plaintiff any special duty whatsoever.

2. That the plaintiff or the public had any right to go upon the premises of the defendant or upon the alleyway, or to use the same for any purpose whatsoever.

3. That the alleyway was used by the plaintiff or the public, or that defendant knew that the plaintiff was in the habit of going on said premises or had ever invited him there.

4. That the defendant knew that the alleged alleyway was a common resort of children of tender years, in which to congregate and play, or that defendant was guilty of any act constituting negligence.

For that it did appear from the allegations of the complaint:

5. That the open alleyway, where the plaintiff alleges he was injured, was the private property of the defendant, and that defendant was in the possession and control thereof, and was using the same for the purposes permitted in its charter.

6. That the plaintiff was a trespasser upon the premises of the defendant and was of such age as to be guilty of contributory negligence, and that the injury of which he complains was due to his own negligence and not to the negligence of defendant.

His Honor overruled the demurrer and gave defendant time to file answer. Defendant excepted and appealed.

*T. T. Hicks* and *J. C. Kittrell* for plaintiff.
*A. C. Zollicoffer* and *J. H. Bridgers* for defendant.

CONNOR, J.  The diagram attached to the complaint shows that the defendant's power house and engine room are located on Spring Street, which intersects with Main Street.  The manager's residence fronts on Main Street.  At its intersection with Spring Street, adjacent to the dwelling, fronting on Main Street, is the theatre, and adjacent thereto is an open or vacant lot.  In the rear of the dwelling there is a high fence.  Between this fence and the power and engine house is a vacant space, called in the complaint an "alleyway," opening on Spring Street and extending the distance of the width of the power and engine house on one side and the dwelling and theatre on the other, and finding an outlet into the vacant lot.  The width of this alleyway is not given, but the depth of the lot upon which the dwelling is located is 114 feet from the corner of Main Street.  In the space or alleyway the defendant has dug three small wells or receptacles several feet deep, into which the hot water from the heating pipes escapes.  "The dwelling and the theatre are heated by hot air or steam, supplied by pipes extending underground from defendant's engines across said alleyway into said buildings."  The wells are usually full of hot water.  The distance of the wells from Spring Street is not given, but from the map it appears that the one into which plaintiff fell is about sixty-two feet from said street and just back of the rear wall of the theatre.  For the purpose of operating its business of supplying light to the city of Henderson the defendant has erected "a large, attractive, brick building, very large dynamos, shaftings and pulleys, engines and boilers, and by means of large doors and windows these machines may be seen from the streets, the railway tracks and the alley near by."  It is further alleged that the entrances to the power and engine rooms are in the said alleyway, and "the machinery, being constantly in motion, is calculated to attract and allure boys and others to see the machinery and what may be seen in the theatre."  Plaintiff, a boy of thirteen,

"with the intelligence usual in boys of said age," passing through said alleyway in October, 1907, not knowing or being warned of the existence of said wells, and the one in controversy not being securely covered, stepped into it and was injured. The negligence alleged is not covering up securely or in anyway guarding "one of said wells," but permitting it to be covered with a thin, weak covering, etc. The demurrer is based upon the failure of the plaintiff to allege any facts showing that defendant owed him any duty in respect to placing, using or covering the wells upon its premises. The plaintiff does not allege that the space called an "alleyway" was ever used or intended to be used either as a public or private way for passing upon or over defendant's premises, nor does he allege that he ever so used it. He does not allege the purpose for which he entered upon the premises or that any relation existed between defendant and himself entitling him to enter upon the alleyway. For the purpose of bringing himself within a class of cases decided by the courts imposing a higher degree of care upon persons having upon their premises structures or other things which are calculated to attract children, he says that "the machinery, being constantly in motion, is calculated to attract and allure boys," etc., "to see the machinery and what may be in the theatre." He does not allege that boys were ever in fact allowed to go into the alleyway for either purpose, or that he was so attracted or allured. It appears from the complaint that the alleyway belonged to and was under the control of defendant, and that the premises were being used for a lawful purpose, and that the wells were useful and necessary for such purpose.

The liability of owners of premises adjacent to the public highways for injuries sustained by persons using such highways, by reason of obstructions or pits placed so near thereto as to render them dangerous, is well settled. *Bunch v. Edenton,* 90 N. C., 431; *Walker v. Reidsville,* 96 N. C., 382. No question of that kind is presented by the complaint, because

148—26

it is not alleged that plaintiff, while using the highway, fell into the well. He expressly negatives this suggestion by saying that "in passing through said alleyway" he was injured. The well was sixty-two feet from the street. ' While the term "alleyway" is used to describe the space upon which the wells were dug, plaintiff does not allege that it was used by the public or that the public were, either expressly or impliedly, invited to use it as a public passway, or that any persons so used it. The use of the term "alleyway" does not of itself imply that the strip of land was dedicated to the public use. *Milliken v. Denny,* 135 N. C., 19. One may well use a portion of his private lot as an alley for domestic purposes or a manufacturing establishment or, as in this case, an electric light plant, for uses connected with his or its business, without subjecting it to a public use. Of course, if, when so used, its servants or others who are invited or entitled to pass over it are injured by pitfalls or obstructions placed there, the owner of the premises is liable. This liability arises out of the duty imposed upon the owner by reason of his relation to his employee or licensee. As we construe the language of the complaint, the defendant did not by leaving the space on Spring Street open invite or grant any license to the public or to the plaintiff to enter upon or pass over the open space or alleyway. He was a trespasser upon the defendant's premises. The liability to him for injuries sustained, therefore, depends upon the measure of duty which it owed to him.

We had occasion at the last term to consider this question in *McGhee v. Railroad,* 147 N. C., 142. After a careful reexamination of the question, in the light of numerous well-considered authorities, we see no reason to change our opinion as expressed in that case. In view of the adoption of the "stock law" in this State, and the custom generally prevailing in our towns of dispensing with fences around lots, the question becomes of more practical importance with us than heretofore. It would impose an unreasonable burden upon the owners of

cultivated lands and of lots in towns to require them to guard every pathway or alley used for their own convenience against the intrusion of trespassers or, in default thereof, be held liable for every injury sustained in passing over their premises or through their property. We do not find that any court has so held. In *Sweeny v. Railroad,* 10 Allen Mass., 386, it is said: "The owner of land is not bound to protect or provide safeguards for wrongdoers. * * * No duty is imposed by law on the owner or occupant to keep his premises in a suitable condition for those who come there solely for their own convenience or pleasure, and who are not expressly invited to enter or induced to come upon them by the purpose for which the premises are appropriated and occupied or by some preparation or adaptation of the place for the use of customers or passengers which might naturally and reasonably lead them to suppose that they might properly and safely enter thereon." In *U. S. Y. & T. Co. v. Rourke,* 10 Ill. App., 474, *Bailey, J.,* says: "It is a general rule of law that the owner of private grounds is under no obligation to keep them in a safe condition for the benefit of trespassers, idlers, bare licensees or others who come upon them, not by any invitation, either express or implied, but for their own convenience or pleasure or to gratify their curiosity, however innocent or laudable their purpose may be." In this case the deceased, while passing over defendant's premises, "without any invitation from the defendant, express or implied, and without any legal right," was injured. There was evidence that other persons were in the habit of passing over the premises, for their own convenience, without any objection on the part of defendant. It was held that defendant was not liable. In *Cooper v. Overton,* 102 Tenn., 211 (73 Am. St. Rep., 864), the Court said: "There can be no liability, unless it was the defendant's duty to fence the pond. It surely is not the duty of an owner to guard or fence every dangerous hole or pond or stream of water on his premises for the protection of per-

sons going upon his land who have no right to go there. No such rule of law is laid down in the books, and it would be most unreasonable to so hold." In *Moran v. Pullman Palace Car Co.,* 134 Mo., 641, *Sherwood, J.,* after discussing the allegations of the complaint, says: "The petition, we think, fails to state a cause of action against defendants, and the demurrers were rightly sustained. The single question presented by the record is whether the owner of a vacant lot, upon which is situated a pond of water or a dangerous excavation, is required to fence it or otherwise insure the safety of strangers, old or young, who may go upon said premises, not by his invitation, express or implied, but for the purpose of amusement or from motives of curiosity," citing *Reebards v. Connells,* 63 N. W., 915, and many others sustaining a demurrer. In that case it appeared that boys had been in the habit of bathing in the pond. There was "a sudden depression, making the water some fifteen feet deep." A boy of nine years was drowned by going into the depression. In *Railroad v. Bingham,* 29 Ohio St., 364, *Boynton, J.,* after reviewing the authorities, thus sums up his conclusion: "The principle underlying the cases above cited recognizes the right of the owner of real property to the exclusive use and enjoyment of the same, without liability to others for injuries occasioned by its unsafe condition, when the person receiving an injury was not in or near the place of danger by lawful right, and when such owner assumed no responsibility for his safety by inviting him there, without giving him notice of the existence or imminence of the peril to be avoided."

In such cases the maxim, *Sic utere ut alienum non lædas,* is in no sense infringed. In its just sense it means, "So use your own property as not to injure the *rights* of another." When no right has been invaded, although one may have injured another, no liability has been incurred. "Actionable negligence exists only when the one whose act causes or occasions the injury owes to the injured party a duty, created

either by contract or operation of law, which he has failed to discharge." The inducement to enter must be equivalent to an invitation. Mere permission is neither inducement, allurement nor enticement. *Carlton v. Iron and Steel Co.,* 99 Mass., 216. The principle, with its limitations, is clearly stated by *Martin, B.,* in *Hardcastle v. Railroad,* 4 Hurls. & N., 67: "When an excavation is made adjoining a public highway, so that a man walking on it might by making a false step or being affected with sudden giddiness fall into it, it is reasonable that the person making such excavation should be liable for the consequences. But when the excavation is made at some distance from the way, and the person falling into it would be a trespasser upon the defendant's land before he reached it, the case seems to me to be different." *Grumlich v. Warst,* 86 Penn. St., 74. These and many other cases which might be cited recognize certain well-established exceptions to the general rule.

The plaintiff seeks to bring himself in the exception which imposes a duty upon the owner of premises who creates or permits conditions calculated to attract children to enter and expose themselves to danger to properly guard them against danger. He says that "the machinery, being constantly in motion, is calculated to attract and allure boys to see the machinery *and* what may be seen in the theatre," and for this reason he says the defendant owed him the duty to securely cover the well, and that his failure to do so was the proximate cause of his injury. It will be noted that he does not say that he was in fact allured or attracted by the moving machinery or by what might be seen in the theatre, but was injured "in passing through the alleyway." In *Lynch v. Nordin,* 41 E. C. L., 422, it was held that when the defendant's servant left a horse harnessed to a cart, standing unhitched in the public streets, and some children near by, being attracted to it, climbed upon the cart, and the horse, moving off, injured plaintiff, defendant was liable. This was put

upon the ground that it was negligence to leave the horse unhitched upon the street and was calculated to attract the attention of children, which fact should have been anticipated by the owner or his servant in charge of the horse. It was conceded that the children were trespassers in getting upon the cart, but held that the conditions were such as imposed upon the defendant the duty of prevision. The case was recognized as "sound law" and cited by the Supreme Court of the United States in *Railroad v. Stout*, 84 U. S., 657, generally referred to in the books as the *"Turntable case."* It was there said that the turntable, although on the right of way or land of the company, was calculated tó attract children, and that their childish propensity to play upon such a structure was or should have been anticipated by the company, imposing upon it the duty to the children of locking or otherwise securing it when not in use. In *Kramer v. Railroad*, 127 N. C., 330, this Court held the defendant liable for injuries sustained by a child while playing upon cross-ties piled in the street of the town of Marion. *Montgomery, J.,* said: "If the cross-ties had been piled upon defendant's own premises instead of in the street, and the defendant had no actual knowledge that children were in the habit of playing on the ties, the law would have imposed no duty upon the defendant to look out for their safety by having the ties piled with that end in view." After noting the *Stout case, supra,* the learned Justice says: "These cases are exceptions to the general rule, and went to the very limit of the law. Mere attractiveness of premises to children will not bring a case within that exceptional doctrine." In *Stendal v. Boyd*, 73 Minn., 53, the defendant, the owner of an uninclosed lot, had made an excavation, which was a dangerous place for children who were accustomed to go there to play, and had been notified that a child had fallen into the pond. Plaintiff's intestate, a child of about five years of age, while playing with other children at a place twelve or fifteen feet from the street, fell

in the pond and was drowned. The Court said that, while it had in a former case followed the *Turntable case,* the doctrine was an exception to the rule of nonliability for accidents from visible causes to trespassers upon his premises.

If the exception is to be extended to this case, then the rule of nonliability as to trespassers must be abrogated as to children, and every owner of property must at his peril make his premises childproof. If the owner must guard an artificial pond on his premises, so as to prevent injury to children who may be attracted to it, he must on the same principle guard a natural pond, etc. The courts which have adopted the doctrine of the *Turntable case* have uniformly held that it was not to be extended to other structures or conditions. A number of highly respectable courts have rejected it as unsound. In *Turess v. Railroad,* 61 N. J. L., 314, *Magie, C. J.,* in a well-considered opinion, reviews the cases and examines the doctrine upon the reason of the thing. After stating the doctrine and the basis upon which it is placed, he says: "It is obvious that the principle on which it rests, if sound, must be applicable more widely than merely to railroad companies and the turntables maintained by them. It would require a similar rule to be applied to all owners and occupiers of land in respect to any structure, machinery or implement maintained by them which possesses a like attractiveness and furnishes a like temptation to young children. He who erects a tower, capable of being climbed, and maintains thereon a windmill to pump water to his buildings—he who maintains a pond in which boys may swim in summer or on which they may skate in winter—would seem to be amenable to this rule of duty. * * * In all of them the doctrine of the *Turntable case,* if correct, would charge the landowner or occupier with the duty of taking ordinary care to preserve young children thus tempted on his land from harm. The fact that the doctrine extends to such a variety of cases, and to cases to which the idea of such a duty is novel and startling, raises

a strong suspicion of the correctness of the doctrine and leads us to question it." The illustration given by the learned Chief Justice shows that he has had experience with towers constructed to support windmills, with ladders leading to the tank, and with boys. He further says that the only rational ground upon which the doctrine can be founded is that having a thing attractive to children on his land is an implied invitation to children to come upon his premises and play upon them, in, around and upon such thing. After showing conclusively that the liability cannot rest upon an implied invitation, he says: "A turntable, however attractive, could not be deemed to have been erected for the use which the child makes of it. This objection is not obviated by an appeal to the doctrine that children of tender years are not held to the same degree of prudence and care as adults, * * * for it is not a question of the child's negligence, but a question of the duty of the railroad company towards the child. If that duty is conceived to arise from the relation created by implied invitation, it must appear that the child is justified in believing that the turntable was designed for the use he makes of it, which is, of course, absurd." The Supreme Court of New Hampshire, in *Frost v. Railroad,* 64 N. H., 220, expressly rejects the doctrine, saying: "We are not prepared to adopt the doctrine of *Stout's case* and cases following it, that the owner of machinery or other property attractive to children is ·liable for injuries happening to children wrongfully interfering with it on his own premises. The owner is not an insurer of infant trespassers." In *Daniels v. Railroad,* 154· Mass., 349, the same conclusion is reached, after a careful examination of the authorities, by *Lathrop,·J.* In *Walsh v. Railroad,* 145 N. Y., 301, *Peckham, J.,* reviews the cases and, for a unanimous Court, holds that defendant is not liable. *Pekin v. McMahon,* 154 Ill., 141. In *Railroad v. McDonald,* 154 U. S., 262, the Court adheres to the doctrine of the *Stout case.* In *Keffe v. Rail-*

*road,* 21 Minn., 207, the complaint alleged that "the defendant knew, also, that many children were in the habit of going upon the turntable to play." The latest discussion of the subject is to be found in *Walker v. Railroad,* 105 Va., 226 (53 S. E., 113); 4 L. R. A., N. S., 80, by *Buchanan, J.* After a careful examination of the decided cases, the learned Justice rejects the doctrine of the *Turntable case,* conceding that "there is a remarkable conflict of authority upon the subject." We have noticed this line of cases, not for the purpose of closing the question as applied to turntables in this Court, but to ascertain the basic principle upon which it was originally founded and the basis of the criticism made of it by other courts. If liability arises in this particular class of cases, it must be because of some principle of the common law applicable to other cases governed by the same reason. Courts guided by the principles of the common law will not arbitrarily select one special object, like a turntable, and fix liability for injuries to children upon it, and refuse to carry the principle to its logical result in other cases. The Court, in *Stout's case,* failed to state the principle upon which it held the defendant liable, but was content to rely largely upon the well-known case of *Lynch v. Nordin.* As has been pointed out by several courts, in that case the horse and cart were left in the street unhitched. This was negligence *per se. Lord Denmon* rested his opinion upon the ground that the defendant should have foreseen that children would be attracted to the horse and cart, etc. There was no suggestion that leaving it unhitched was an implied invitation to drive it away. On the contrary, it was conceded that the children were trespassers. It is manifest that if the liability rests upon the theory that a turntable or other dangerous machinery or ponds, excavations, structures, etc., on one's own premises, attractive to children, constitutes an implied invitation to them to enter and play with or upon them, the children are not trespassers or mere licensees, but come upon the premises with all of the rights on

their part and duties on the part of the owner of the premises attaching to that relation. Again, if this be the principle, it is impossible to put any limit upon it other than to include such things as either the child, the court or the jury may regard as attractive or alluring. "The viciousness of the reasoning which fixes liability upon the landowner because the child is attracted lies in the assumption that what operates as a temptation to a person of immature mind is in effect an invitation. Such an assumption is not warranted." *Gummere, J.,* in *Railroad v. Reich,* 61 N. J. L., 635. The difference between a temptation to commit a trespass and an invitation to come upon one's premises is pointed out by *Mr. Justice Holmes* in *Holbrook v. Aldrich,* 168 Mass., 16. These cases are cited with approval by *Buchanan, J.,* in *Walker's case, supra.*

The present case illustrates the fallacy of the theory of implied invitation. Would it ever occur to any reasonable mind that constructing the building with large windows and doors, placing in it the engines, dynamos and other machinery and keeping them constantly in motion for the purpose of discharging its corporate functions and duties, however attractive to small boys, was an invitation to them to make the premises a playground? To adopt the suggestion carries us too far afield for the practical affairs of life and violates manifest truth. *Judge Buchanan* thus clearly and forcibly illustrates the fallacy of it: "No landowner supposes for a moment that by growing fruit trees near the highway or where boys are accustomed to play, however much they may be tempted to climb the trees and take his fruit, he is extending to them an invitation to do so, or that they would be any the less trespassers if they did go into his orchard because of the temptation. No one believes that a landowner, as a matter of fact, whether a railroad company or a private individual, who makes changes on his own land in the course of a beneficial user, which changes are reasonable and lawful,

but which are attractive to children and may expose them to danger if they should yield to the attractiveness, is by that act alone inviting them upon his premises. The doctrine of implied invitation is not sustained by the English cases and has been utterly rejected by the highest courts of a number of States.

It must be conceded that the liability for injuries to children sustained by reason of dangerous conditions on one's premises is recognized and enforced in cases in which no such liability accrues to adults. This we think sound in principle and humane in policy. We have no disposition to deny it or to place unreasonable restrictions upon it. We think that the law is sustained upon the theory that the infant who enters upon premises, having no legal right to do so, either by permission, invitation or license or relation to the premises or its owner, is as essentially a trespasser as an adult; but if, to gratify a childish curiosity, or in obedience to a childish propensity excited by the character of the structure or other conditions, he goes thereon and is injured by the failure of the owner to properly guard or cover the dangerous conditions which he has created, he is liable for such injuries, provided the facts are such as to impose the duty of anticipation or prevision; that is, whether under all of the circumstances he should have contemplated that children would be attracted or allured to go upon his premises and sustain injury. The principle is well stated in 21 Am. and Eng. Enc., 473, and was cited with approval in *McGhee's case, supra.* "A party's liability to trespassers depends upon the former's contemplation of the likelihood of their presence on the premises and the probability of injuries from contact with conditions existing thereon." Immediately following this language the editor says: "The doctrine that the owner of premises may be liable in negligence to trespassers whose presence on the premises was either known or might reasonably have been anticipated is well applied in the rule of numerous cases, that one who

maintains dangerous implements or appliances on uninclosed premises of a nature likely to attract children in play, or permits dangerous conditions to exist thereon is liable to a child who is so injured, though a trespasser at the time when the injuries are received; and, with stronger reason, when the presence of a child trespasser is actually known to a party or when such presence would have been known had reasonable care been exercised.   *   *   *   But when, under the circumstances, the presence of children on the premises was not reasonably to have been anticipated, there is, of course, no duty as to such persons to have the premises safe. And likewise when, though children might have been expected to come upon the property, no injuries to them should reasonably have been contemplated, under the circumstances, there is no negligence and consequently no liability." Cases are cited which sustain these propositions. We think this the correct principle upon which the liability should rest. As said in *Kramer's case, supra,* "Mere attractiveness of premises will not bring a case within the exceptional doctrine."

To allege simply that the machinery, including dynamos, engines, etc., in an attractive building in the populous portion of a city "is calculated to attract and allure boys and others to see the machinery" does not bring the case within the exception to the general principle. There is no suggestion that any boys had been "attracted or allured," nor is it even averred that the plaintiff was on the premises to see the machinery. On the contrary, the map shows that the location of the well into which he fell was on the side of the alleyway opposite the machinery. It is not easy to see how at that place the plaintiff could have seen the machinery. Again, there could be no possible danger in looking at the machinery. The attractive building had large windows and doors, through which "those machines may be seen from the street" and other points. The case is in some respects similar to *Schmidt v. Distilling Co.,* 90 Mo., 284, in which a child was scalded by

falling into a pit or well into which pipes carrying hot water emptied. The Court, after stating the general principle, says: "The evidence in this case does not show that the escape pipe at its outlet on defendant's premises or the place into which it discharged the boiling water was attractive to children. * * * There is no evidence that children were in the habit of resorting to this place for amusement or otherwise." We have not overlooked the allegation that the moving machinery was calculated to attract and allure boys to see the machinery and "what may be seen in the theatre." The theatre fronts on Main Street. Its rear wall abuts on the alleyway. Just how the machinery, 114 feet from the front of the theatre, is calculated to allure boys to see "what may be seen" therein is not made clear by the complaint. We do not suppose that the learned counsel seriously contend that the defendant invited the plaintiff, a boy of thirteen years, to look in the back windows of a theatre, or that it could have reasonably anticipated that he would do so, when he fails to even suggest that in truth he was doing so when he fell into the well. We have no disposition to narrow the limits of liability of owners of premises for injuries sustained by a breach of duty to young children, but, as in all other cases of alleged negligence, it must appear that a duty is imposed upon the defendant and that by reason of its breach plaintiff was injured. Legal rights and liabilities must rest upon some reasonably settled basis, fixed either by the common law or by statute. As was well said by *Judge Buchanan,* "While the courts should and do extend the application of the common law to the new conditions of advancing civilization, they may not create new principles or abrogate a known one. If new conditions cannot be properly met by the application of existing laws, the supplying of needed laws is the province of the Legislature and not the judicial department of the government." The complaint fails to show that defendant has violated any legal duty to plaintiff imposed by the law.

Again, in the numerous cases which we have examined we do not find any in which a boy of thirteen years, "with the usual intelligence of boys of that age," has been permitted to rely upon the attractive allurements of machinery to children. It is not stated whether the injury was sustained at night or in the daytime. If, as suggested on the argument, the plaintiff was allured by the desire to see what was going on in the rear end of the theatre, it would be carrying the doctrine of "reasonable anticipation" far beyond any case found in the books to hold defendant liable. Theatres are to be "seen into" from the front door.

We have not overlooked the authorities cited by plaintiff's counsel. Those in which liability is fixed upon the authority of the "Spring gun" cases are obviously distinguished from this. We have discussed the "Turntable cases." There is undoubtedly some conflict in the numerous cases found in the reports. We have not overlooked the fact that the well was insecurely covered. In our view, the defendant did not owe any duty to plaintiff to cover the well at all, as it was under no obligation to anticipate that he would come upon its premises. If, as we hold, he was an unexpected trespasser and not within the exception to the general rule, it was his duty to look out for danger, and not the duty of defendant to provide against danger. We are of the opinion that the demurrer should have been sustained.

It is, of course, understood that we are discussing the defendant's liability upon the principles of the common law. If, as is frequently done, the municipal authorities deem the conditions described dangerous to the public, they may by appropriate ordinances require the owners to guard or fence the premises. In this way the conditions are met without imposing unreasonable burdens upon property owners. In the majority of the large towns in the State the residential and business lots are open—fences have been removed. Probably in a large majority of them, at times, conditions exist—

wood piles, coal bins, flower pits, barrels for receiving sewage, and many others—which are dangerous to persons passing over them at night. To impose upon the owners the burden of prevision, in the absence of any suggestion that by acquiescence or otherwise they had given a license to trespassers, would imperil the property of innocent persons. We have discussed the case at more than usual length because of its importance to the public and because the questions presented have not heretofore been decided by this Court. This decision will be certified to the Superior Court of Vance, to the end that further proceedings may be had in accordance with the course and practice of the court.

Error.