HARRY LANIER, Administrator of the Estate of THEODOCIA LANIER v. NORTH CAROLINA STATE HIGHWAY COMMISSION

No. 762IC384

(Filed 3 November 1976)

**1. Negligence § 60— deceased as trespasser — defendant's duty toward**

In a wrongful death action where plaintiff claimed that his intestate drowned in a pit negligently maintained by defendant, deceased, who was at the site without invitation or license from defendant, was a trespasser to whom the defendant owed the duty not to injure wilfully or wantonly.

**2. Negligence § 51— attractive nuisance — required elements**

Generally, the attractive nuisance doctrine is applicable when, and only when, the following elements are present: (1) the instrumentality or condition must be dangerous in itself; (2) it must be attractive and enticing to young children; (3) the children must be incapable, by reason of their youth, of comprehending the danger involved; (4) the instrumentality or condition must be left unguarded and exposed at a place where children of tender years are accustomed to resort or where it is reasonably to be expected that they will resort; (5) it must be reasonably practical either to prevent access to the instrumentality or else render it innocuous without obstructing any reasonable purpose or use for which it was intended.

**3. Negligence § 51— body of water — no attractive nuisance per se — presence of sharp drops and holes — no exception to rule**

In a wrongful death action where plaintiff claimed that his intestate drowned when she stepped from shallow water into deep water in a pit maintained by defendant, the presence of sharp drops and deep holes in the pit did not bring this case within an exception to the rule that bodies of water do not *per se* constitute attractive nuisances, since every *body of water is potentially* subject to sharp drops and deep holes; moreover, the possible danger of drop offs and holes was, or should have been, known to claimant's intestate.

**4. Negligence § 51— 14 year old drowning in pit — attractive nuisance doctrine inapplicable**

In an action for wrongful death where plaintiff's intestate, a 13 or 14 year old of at least average intelligence, drowned in a pit maintained by defendant, the doctrine of attractive nuisance was inapplicable, since that doctrine applies only to children who, because of their youth, do not discover the condition or realize the risk involved in intermeddling with it. The doctrine does not extend to those conditions the existence of which is obvious even to children and the risk of which is fully realized by them.

APPEAL by claimant from order of North Carolina Industrial Commission. Order entered by Commission, sitting in full, on 3 November 1975. Heard in the Court of Appeals 16 September 1976.

This action arose as a wrongful death claim filed on 4 May 1973 by Harry Lanier (hereinafter called "claimant") as administrator of the estate of Theodocia Lanier against the North Carolina State Highway Commission (hereinafter called "Commission") for the negligence of D. W. Patrick, a Division Engineer for the Commission. In the affidavit that formed the basis of his claim, claimant stated under oath that

"The death of Theodocia Lanier upon which this claim is based occurred on July 9, 1971, in Martin County, North Carolina. The claim arises out of the death by drowning of Theodocia Lanier, age 14, on the above-mentioned date at a sand pit located about one mile off U. S. 64, three and one-half miles east of Williamston in Martin County.

The pit in question was constructed by the State Highway Commission (Project No. 6.092073) pursuant to an agreement entered into between the Commission and Harry Lanier and wife, Thelma M. Lanier; Rose Bolden; Cheldon Lanier and wife, Frances Lanier, which provided that the Highway Commission could enter on the lands of the above-named persons for the purpose of excavating and removing such material therefrom as it may find suitable for the construction and for maintenance of public roads.

Pursuant to the agreement, large quantities of sand were removed from the land in question. Ultimately, a large pit filled with water. The pond was, on the date in question, L-shaped, and approximately 500 feet long and 50 feet in width. The pond ranged in depth from shallow to some 12 feet in depth at other points.

On July 9, 1971, Theodocia Lanier, in the company of Emma Scott, age 11, and Leslye (sic) King, then age 11, were wading in a shallow portion of the pond on a sandbar just off the point of the instep of the "L" in the pond. Theodocia Lanier and Emma Scott slipped off the sandbar and into water approximately 10-12 feet in depth. As a result, both girls lost their lives by accidental drowning.

The pit in question was open, unguarded in any manner and near the road. For a substantial period of time children of all ages had frequented the pit playing in and near the water. As such, the pond constituted and was known to the employees of respondent to constitute an attractive nuisance to children. Respondent was negligent in constructing the pit with an extremely uneven bottom which greatly increased the possibility of an accidental death by drowning should a child playing in the pit step off into a deep area. It was foreseeable at the time of construction that the pit, being located over an underground natural spring, would rapidly fill with water."

The Commission filed an "Answer, Demurrer or Other Pleading of Defendant to Plaintiff's Affidavit," in which it raised a number of defenses. The defense pertinent to this appeal is as follows:

"As a Sixth Further Answer and Defense, the defendant says and alleges that the deceased, as a trespasser to the defendant, was only owed a duty not to be willfully or wantonly injured, which is not alleged, and that the attractive nuisance doctrine would not apply to the deceased."

On 4 March 1975, the claim was heard before Deputy Commissioner W. C. Delbridge. Claimant's evidence tended to show that the pit in question was located on land in Martin County leased by the Commission which had permission to excavate and remove sand, gravel and other materials from the land. Beginning in 1969, the Commission extracted soil from the land which resulted in water collecting in the pit. Local residents, including deceased's father, saw area children swimming in the pit in the summer of 1971, although her father testified that he was not aware his daughter swam there and that he had never warned his children to stay away from the pit. Deceased's father constructed a cable across the road which led to the pit while his family conducted negotiations for compensation by

the Commission, but he never erected warning signs near the entranceway. Three witnesses testified that there were no warning signs near the pit prior to the date of the drowning.

On 9 July 1971, Theodocia Lanier and Emma Scott suggested to their companion, Leslie Lane King, that they go swimming in the pit. They waded in the shallow end of the pit where the water came up to their knees. Theodocia said, "This is the way my brother and them used to ride piggy-back, like this," whereupon one began to "ride" on the other's back. While in this position, they apparently walked off the shallow sandbar and fell into the deep water. Both girls drowned. Theodocia was 13 years old at the time of her death. Her father testified that "[s]he was average. She appeared to be intelligent." Her mother stated that ". . . she was intelligent. Just like an ordinary child was her understanding of right and wrong and the thing around her" while her brother testified "[s]he was intelligent. She was average in school."

The Commission introduced evidence which tended to show that the Commission had entered into an agreement in May 1969, which provided for a 15-year lease of the property in question. A dispute over the compensation arose, and the final lease was not completed until December 1975. Pursuant to the preliminary agreement of May 1969, the Commission began excavating soil from the property. In accordance with its standard procedure, the Commission placed signs reading "STATE HIGHWAY COMMISSION LEASED PROPERTY—KEEP OFF" near the pit in question in May, 1969. From time to time, the signs were taken, whereupon the Commission replaced them. William Sessoms, a District Engineer with the Commission at the time of the drowning, testified that he visited the pit on the Monday following the accident and that he saw "Keep Off" signs on each side of the driveway leading to the pit. W. E. Moore, then a District Engineer for the Commission, testified on cross-examination that "It never occurred to me people were using the pit. We have built many pits similar to this. I have heard that others have been used as swimming pools. . . . I am familiar with the fact that people use pits as swimming holes." M. S. Raynor, an Area Foreman for the Commission, testified he was aware that children "use 'em for swimming holes. I have heard of this before."

On 19 June 1975, the Deputy Commissioner filed a "Decision and Order" in the matter which contained the following findings of fact and conclusions of law:

## "FINDINGS OF FACT

1. This action was filed on May 4, 1973, by the plaintiff, Harry Lanier, as the Administrator of the Estate of Theodocia Lanier, against the State Highway Commission for damages as a result of the death of plaintiff's intestate by drowning.

2. D. W. Patrick was the Division Engineer of this area of the State and a regular employee of the State Highway Commission.

3. On July 9, 1971, Theodocia Lanier, age 14; Emma Scott, age 11, and Leslie Lane King, age 11, went wading in an excavation area with standing water. Both Theodocia Lanier and Emma Scott waded a few yards into the water, slipped off a sandbar into a drop-off, and drowned.

4. The land on which the excavation was located was owned by several brothers and sisters including plaintiff. It was leased on May 3, 1969, by the State Highway Commission for fifteen years for the purpose of excavating sand for use by the defendant. The defendant had erected poles at the entrance with a sign on each pole which read: 'State Highway Commission Leased Property—Keep Off.'

5. The defendant began the excavation of the land in May 1969, but was not working the area for the few months surrounding the unfortunate drownings since there was a disagreement about payment, and the area foreman advised his workmen that they were denied entry.

6. Nevertheless during this entire period of time from the lease of the property until at least Monday after the accident on Friday various Highway Commission personnel including M. S. Raynor, the area foreman; and William Sessoms, then District Engineer, rode by the excavation site on numerous occasions and never saw children playing in the water, nor did any Highway Commission personnel receive complaints of children using the area for swimming.

7. Children did on occasions use the area for swimming, but there is no evidence that anyone ever advised the High-

way Commission of this, nor is there any evidence that Highway Commission personnel traveled the area when children were swimming.

8. The plaintiff had seen one of his sons using the excavation site for swimming but had not told that son, his deceased daughter, or other of his children not to swim at the site.

9. The defendant Highway Commission had no notice either actual or constructive that children were swimming at the excavation site.

The foregoing findings of fact and conclusions of law engender the following additional

### CONCLUSIONS OF LAW

1. There was no negligence on the part of employees of the defendant which led to the unfortunate death of plaintiff's intestate. G.S. 143-291, et seq.

2. As stated by the Supreme Court in a per curiam opinion, 'A person has the right to maintain an unenclosed pond or pool on his premises. It is not an act of negligence to do so.' BURNS v. GARDNER, 244 N.C. 602. As in McLEAN v. WARD, 1 N.C. App. 572, there is evidence that the lessor, Highway Commission, through its agents, was at the site, and there is evidence that the children used the area for swimming. These did not occur simultaneously, and there is insufficient evidence therefore to put the defendant on notice of a potential attractive nuisance.

Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following

### ORDER

1. Plaintiff's claim is hereby DENIED, and the action is DISMISSED."

On 8 July 1975, claimant filed an application for review of the case by the North Carolina Industrial Commission sitting in full. On 3 November 1975, the Full Commission entered a "Decision and Order" which stated, inter alia, that

"Based upon the evidence of record, the Full Commission hereby AFFIRMS and adopts as its own the Decision and

Order of Deputy Commissioner W. C. Delbridge in its entirety.

There is no evidence of any overtly negligent conduct on the part of employees of the defendant. Nor is the doctrine of attractive nuisance applicable to the facts of this case. . . . "

Claimant appeals from this order.

*Attorney General Edmisten, by Assistant Attorney General Ralf F. Haskell, for the State.*

*Milton E. Moore for claimant appellant.*

MORRIS, Judge.

In his sole assignment of error, claimant contends that the Commission erred in its failure to find, as a matter of law, that the pit in question was an attractive nuisance. In reviewing an order of the Industrial Commission, we are guided by the principle that the order will stand if its findings of fact are supported by competent evidence and if its conclusions of law are supported by the findings of fact. *Tanner v. Dept. of Correction,* 19 N.C. App. 689, 200 S.E. 2d 350 (1973).

[1, 2] At the time of the drowning, deceased was at the excavation site without invitation or license from the Commission. As such, she was a trespasser, to whom the Commission owed only the duty not to injure her willfully or wantonly. *Dean v. Construction Co.,* 251 N.C. 581, 111 S.E. 2d 827 (1960); *McLamb v. Jones,* 23 N.C. App. 670, 209 S.E. 2d 854 (1974). The attractive nuisance doctrine, however, represents an exception to the general rule regarding the liability of landowners for injuries sustained on the premises by trespassers. This Court has stated:

"Generally, the attractive nuisance doctrine is applicable when, and only when, the following elements are present: (1) The instrumentality or condition must be dangerous in itself, that is, it must be an agency which is likely to, or probably will, result in injury to those attracted by, and coming into contact with, it. (2) It must be attractive and alluring, or enticing, to young children. (3) The children must have been incapable, by reason of their youth, of comprehending the danger involved. (4) The instrumen-

tality or condition must have been left unguarded and exposed at a place where children of tender years are accustomed to resort, or where it is reasonably to be expected that they will resort for play or amusement, or for the gratification of youthful curiosity. (5) It must have been reasonably practicable and feasible either to prevent access to the instrumentality or condition, or else to render it innocuous, without obstructing any reasonable purpose or use for which it was intended." *McCombs v. City of Asheboro*, 6 N.C. App. 234, 242-43, 170 S.E. 2d 169 (1969), citing 65 C.J.S., Negligence, § 63(76), p. 815.

**[3]** North Carolina has consistently ruled that ponds, pools, lakes, streams, reservoirs, and other bodies of water do not *per se* constitute attractive nuisances. *Matheny v. Mills Corp.*, 249 N.C. 575, 107 S.E. 2d 143 (1959); *Stribbling v. Lamm*, 239 N.C. 529, 80 S.E. 2d 270 (1954); *Fitch v. Selwyn Village*, 234 N.C. 632, 68 S.E. 2d 255 (1951). Claimant recognizes the general rule but argues that the presence of the sharp drops and deep holes in the pit bring this case within an exception to the rule. We cannot agree. Every body of water is potentially subject to sharp drops and deep holes such as existed in this case. This possible danger was, or should have been, known to claimant's intestate.

**[4]** There is an additional reason that the attractive nuisance doctrine is not applicable in this case. In *Dean v. Construction Co., supra*, at 588, Bobbitt, Judge, stated:

"[T]he attractive nuisance doctrine is designed to protect 'small children' or 'children of tender age'. 38 Am. Jur., Negligence § 157. It applies to children who, 'because of their youth do not discover the condition or realize the risk involved in intermeddling in it or coming within the area made dangerous by it.' Restatement of the Law of Torts, § 339(c). '*It does not extend to those conditions the existence of which is obvious even to children and the risk of which is fully realized by them.*' Restatement of the Law of Torts, § 339, Comment, p. 922." (Emphasis supplied.)

And in *Briscoe v. Lighting & Power Co.*, 148 N.C. 396, 414, 62 S.E. 600 (1908), it was said that " . . . in the numerous cases which we have examined we do not find any in which a boy of thirteen years, 'with the usual intelligence of boys of that age,'

has been permitted to rely upon the attractive allurement of machinery to children." Here, the testimony indicated that claimants' intestate was 13 or 14 years old and that she possessed at least average intelligence. Accordingly, the doctrine of attractive nuisance is inappropriate in this case.

Having reviewed the entire record we hold that the Industrial Commission's findings of fact were supported by competent evidence and that its conclusions are supported by its findings and by sound legal principles. Therefore, the order of the Full Commission is

Affirmed.

Judges HEDRICK and ARNOLD concur.