CLYDE GRIFFIN, Administrator of the Estate of Christopher Griffin, deceased, Plaintiff-Appellant v. MARVIN WOODARD, BELFAST VOLUNTEER FIRE FIGHTERS, INC., and EDWIN BEAMON, Defendants-Appellees

No. COA96-877

(Filed 1 July 1997)

**Negligence § 142 (NCI4th)— wrongful death—child playing with free-standing chimney—attractive nuisance—summary judgment for defendants**

The trial court did not err by granting summary judgment for defendants in a wrongful death action arising from the death of an eleven-year-old child who, with other children, was pulling bricks from the standing chimney of a burned farmhouse to throw at the tin roof of the house when the chimney collapsed upon him. Although plaintiff alleged attractive nuisance, the evidence showed that the child was eleven and one-half years old, intelligent, and a student who followed directions. He was capable of appreciating the danger involved in removing a sufficient number of bricks from the free-standing chimney.

**Am Jur 2d, Premises Liability §§ 290, 309 et seq.**

Appeal by plaintiff from judgment entered 19 March 1996 by Judge W. Russell Duke, Jr. in Pitt County Superior Court. Heard in the Court of Appeals 1 April 1997.

*Ward and Smith, P.A., by Donald S. Higley, II and A. Charles Ellis; and McLawhorn & Associates, by Charles L. McLawhorn, Jr.; for plaintiff-appellant.*

*Gaylord, McNally, Strickland & Snyder, L.L.P., by Danny D. McNally, for defendant-appellee Marvin Woodard.*

*Yates, McLamb & Weyher, L.L.P., by Derek M. Crump and Travis K. Morton, for defendant-appellee Belfast Volunteer Fire Fighters, Inc.*

*Wallace, Morris, Barwick & Rochelle, P.A., by Thomas H. Morris and William E. Manning, Jr., for defendant-appellee Edwin Beamon.*

WALKER, Judge.

On 15 January 1994, eleven-year-old Christopher Griffin (Christopher) was visiting his uncle, the Reverend Anthony Ward

(Ward). He spent the day playing with Ward's nine-year-old daughter, Lauren Ward (Lauren) and Ward's nine-year-old neighbor, Joshua Short (Joshua). At different times during the day, the children were playing in and around the remains of a burned farmhouse located on a tract of land owned by defendant Woodard and leased by defendant Beamon. Among the remains of the farmhouse stood the unsupported chimney which was not leveled after the farmhouse was burned.

At some point during the day, Ward heard the children throwing bricks at the collapsed tin roof of the farmhouse. Lauren and Christopher also had begun removing bricks from the chimney and dislodged a sufficient number of bricks to make a hole to climb through. Ward then warned the children to stay away from the burn site. Later in the day, however, Ward went out to run an errand and the children returned to the burn site. Christopher began using a screwdriver to chip away at the mortar of the chimney and continued to remove bricks. Around 4:00 p.m., Lauren was moving some rocks she had discovered at the burn site over to her yard. Just as she turned to call out for Christopher she saw the chimney collapse on top of him. As a result of the collapse, Christopher received massive head injuries which caused his death.

In September 1992, approximately sixteen months before the incident involving Christopher, defendant Beamon, a charter member of the Belfast Volunteer Fire Department, suggested to the Fire Department that the farmhouse could be burned as part of a training exercise known as a live burn. Defendant Woodard authorized the live burn which took place in October 1992.

The burn consumed the wooden structure of the house and left only the chimney standing. After the burn, the fire fighters sprayed the chimney with water from a high pressure hose for approximately twenty minutes, resulting in a portion of the chimney being knocked away. There was conflicting evidence as to how much of the chimney remained standing after being sprayed with the high pressure hose. Ward testified that fifteen feet of the chimney remained standing, whereas the Chief of the Belfast Volunteer Fire Fighters testified that "six to seven feet" remained standing.

Plaintiff instituted this wrongful death action on 23 February 1994 alleging that Christopher Griffin's death was caused by the negligence of the defendants. Specifically, plaintiff alleged that defendants left standing a brick chimney which they knew or should have known would attract young children thereby creating an attractive

**GRIFFIN v. WOODARD**

[126 N.C. App. 649 (1997)]

nuisance. Each defendant separately moved for summary judgment. All three motions were granted by the trial court.

Plaintiff argues that the trial court erred in granting summary judgment for the three defendants as there are genuine issues of material fact as to the negligence of all defendants.

"A party moving for summary judgment may prevail if it meets the burden (1) of proving an essential element of the opposing party's claim is nonexistent, or (2) of showing through discovery that the opposing party cannot produce evidence to support an essential element of his or her claim." *Broadway v. Blythe Industries, Inc.*, 313 N.C. 150, 152, 326 S.E.2d 266, 268 (1985) (citations omitted). In this case, all three defendants, as the moving parties, "must prove that an essential element of plaintiff's claim is nonexistent or show that a forecast of plaintiff's evidence indicates an inability to prove facts giving rise at trial to all essential elements of his claim." *Id.* at 153, 326 S.E.2d at 269.

The rule of the attractive nuisance doctrine was explained earlier by our Supreme Court in *Briscoe v. Lighting & Power Co.*, 148 N.C. 396, 411, 62 S.E. 600, 606 (1908):

It must be conceded that the liability for injuries to children sustained by reason of dangerous conditions on one's premises is recognized and enforced in cases in which no such liability accrues to adults. This we think sound in principle and humane in policy. We have no disposition to deny it or to place reasonable restrictions upon it. We think that the law is sustained upon the theory that the infant who enters upon the premises, having no legal right to do so, either by permission, invitation or license or relation to the premises or its owner, is as essentially a trespasser as an adult; but if, to gratify a childish curiosity, or in obedience to a childish propensity excited by the character of the structure or other conditions, he goes thereon, and is injured by the failure of the owner to properly guard or cover the dangerous conditions which he has created, he is liable for such injuries, provided the facts are such as to impose the duty of anticipation or prevision; that is, whether under all of the circumstances he should have contemplated that children would be attracted or allured to go upon his premises and sustain injury.

More recently, our Supreme Court in *Broadway v. Blythe Industries, Inc.*, 313 N.C. 150, 154, 326 S.E.2d 266, 269 (1985), set

forth the elements of the attractive nuisance doctrine adopted from the Restatement (Second) of Torts 333 (1965). These elements are as follows:

> A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if

> (a) the place where the condition exists is one upon which possessor knows or has reason to know that children are likely to trespass, and

> (b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and

> (c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or coming within the area made dangerous by it, and

> (d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and

> (e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children.

All of the elements must be present in order to maintain a claim under this doctrine. Although the defendant Belfast Volunteer Fire Fighters, Inc. is not an owner or possessor of the land, it could still be held liable under the attractive nuisance doctrine if it created a dangerous condition on the land on behalf of the possessor and knew or should have known that children were likely to trespass on that part of the land. *Id.* at 155, 326 S.E.2d at 270.

Viewing the evidence in the light most favorable to the plaintiff, we will assume that here the first two elements of the attractive nuisance doctrine are present, i.e. defendants knew or should have known the likelihood of child trespassers on the burn site and the condition of the chimney was one which the defendants knew or should have known would involve an unreasonable risk of death or serious bodily harm to such child trespassers. However, we must then determine whether the plaintiff has produced evidence suffi-

cient to support the third requirement of an attractive nuisance and that is did Christopher, because of his youth, realize the risk involved with intermeddling with the chimney.

In *Lanier v. Highway Comm.*, 31 N.C. App. 304, 311, 229 S.E.2d 321, 325 (1976), this Court upheld the decision of the Industrial Commission which ruled there was no negligence on the part of defendant's employees which led to the unfortunate death of plaintiff's intestate, Theodocia Lanier. Theodocia Lanier was wading in an unguarded water-filled pit when she slipped off a sandbar and into water approximately 10-12 feet deep. *Id.* at 306, 229 S.E.2d at 322. In determining whether the defendant was negligent under the attractive nuisance doctrine, the Court first noted that " '[T]he attractive nuisance doctrine is designed to protect "small children" or "children of tender age.' " *Id.* at 311, 229 S.E.2d at 325 (*quoting Dean v. Construction Co.*, 251 N.C. 581, 588, 111 S.E.2d 827, 832 (1960)). The Court then held the attractive nuisance doctrine to be inapplicable in a case where the evidence showed claimants' intestate was 13 or 14 years old at the time of the incident and that she possessed at least average intelligence. *Id.* at 312, 229 S.E.2d at 325.

A comparable issue was also decided in *Hawkins v. Houser*, 91 N.C. App. 266, 371 S.E.2d 297 (1988). In *Hawkins*, the plaintiff's intestate, Rodney Pless, age 12, drowned when he rode his bicycle onto a frozen pond, located on defendants' property, and fell through the ice. *Id.* at 268, 371 S.E.2d at 298. Plaintiffs claimed that defendants were negligent in maintaining the pond and were liable for the wrongful death of Pless under the attractive nuisance doctrine. However, the trial court dismissed these claims. This Court upheld the dismissal, finding the attractive nuisance doctrine did not apply in this case. The Court stated:

> According to the materials the victims were capable of appreciating the danger of the ice giving way, the decedent Pless was on the pond as a trespasser, defendants did nothing to either conceal or enhance the danger, and the attractive nuisance doctrine does not apply because the decedent Pless was not a child of tender years but an intelligent 12 year old capable of recognizing the danger in riding a bicycle over an ice-covered body of water.

*Id.* at 269, 371 S.E.2d at 299.

The instant case is similar to both *Lanier* and *Hawkins*. The evidence showed that Christopher was almost eleven and one-half years

old and was described as intelligent and as a student who followed instructions. Therefore, we conclude he was capable of appreciating the danger involved in removing a sufficient number of bricks from the free-standing chimney.

In arguing that the attractive nuisance doctrine applies here, plaintiff relies on *Broadway v. Blythe Industries, Inc.*, 313 N.C. 150, 326 S.E.2d 266 (1985) where our Supreme Court, in reversing summary judgment, stated that the defendant had the burden of proving that an essential element of the plaintiff's claim was nonexistent. The Court held:

> We are satisfied that plaintiff has brought forward sufficient evidence to support every essential element of his claim . . . .[Defendant] was warned that there were children nearby and that they would likely play on the pipes; that unsecured pipes of the size and weight left at the site by [defendant] involved an unreasonable risk of death or serious bodily harm to children who might play on them; that children would not realize the risk of becoming hurt by playing on the pipes; . . . (emphasis added).

*Id.* at 156, 326 S.E.2d at 270. We find an important distinction in that *Broadway* involved a child who was only five years of age. We acknowledge the tragic accident and loss of life in this case; however, the attractive nuisance doctrine has been applied over the years to protect "small children" or "children of tender years."

The trial court's grant of summary judgment in favor of all defendants is

Affirmed.

Judges EAGLES and MARTIN, Mark D. concur.