Margaret Hughes, · as Administratrix of Ellen Hughes, Deceased, Respondent *v.* The City of Auburn, Appellant.

1. Municipal Corporations — Neglect to Observe Sanitary Laws in Sewer System. An individual who, without any invasion of his property rights, has suffered from disease, superinduced by the neglect of the authorities of a city to observe sanitary laws in the construction or maintenance of a system of sewerage, cannot recover damages for the injury from the municipality.

2. Member of Property Owner's Family has no Special Remedy. While a city may not conduct sewage into the house or upon the premises of an individual, and, if it does, is responsible to him in damages for the trespass or nuisance, the injury is one to property for which the owner alone may demand redress, and a member of his family has, as such, no special remedy against the municipality for personal suffering caused by its neglect of sanitary precautions against disease.

3. Municipal Sewerage a Governmental Function. In the construction and maintenance of a sewer or drainage system a municipal corporation exercises a part of the governmental powers of the state for the customary local convenience and benefit of all the people; and in the exercise of these discretionary functions the municipality cannot be required to respond in damages to individuals for injury to health, resulting either from omissions to act, or the mode of exercising the power conferred on it for public purposes to be used at discretion for the public good.

4. Action for Damages for Death — Limitation upon Assertion of Right of Recovery. In an action brought by the personal representative of the deceased, to recover damages for a death, under the statute, the plaintiff can assert no right that the deceased could not have asserted had he lived; and, hence, can assert no right in himself as the owner of premises affected by the cause of the death.

5. Non-application of Statute Permitting Actions for Damages for Death. The statute (Code Civ. Pro. § 1902) which permits actions for damages by reason of death caused by the wrongful act,

neglect or default of another has no application to an action against a city by the representative of one who died from disease superinduced by the neglect of sanitary precautions on the part of the public authorities in the construction and maintenance of a sewer system.

*Hughes* v. *City of Auburn,* 21 App. Div. 311, reversed.

(Argued October 23, 1899; decided November 28, 1899.)

APPEAL from an order of the Appellate Division of the Supreme Court in the fourth judicial department, entered October 29, 1897, sustaining plaintiff's exceptions to the direction of a verdict for the defendant, and granting a new trial.

This action was brought by the plaintiff, in her representative capacity, to recover the statutory damages in cases of death caused by the wrongful act or neglect of another.

It is alleged in the complaint, and the proof tended to show that some years prior to the year 1881 the defendant caused to be built across a private lot a dry stone sewer for the purpose of disposing of surface water. Subsequently the defendant made use of the same as a part of its general sewer system for draining a portion of the city. It appears that this dry stone sewer was not sufficient to carry off the sewage conducted into it from the general drainage system of the city, and as a result sewage was frequently discharged into the plaintiff's cellar, and gave rise to foul and sickening odors and vapors, which were detrimental to health and life.

It was charged that, although the defendant had had notice of these facts, and had been requested to remedy the defects, it had neglected to do so; that the plaintiff's daughter became ill in 1891, and that during that year, and down to the time of her death in 1892, through the continued use by the defendant of this sewer, sewage was deposited in the cellar of the plaintiff's house and in the soil surrounding it, generating foul air, whereby her daughter's illness was aggravated and death caused.

It appeared that this dry stone sewer had been constructed by the city upon the line of a natural watercourse for the pur-

13

pose of discharging the water thereof, as well as the surface water of the adjoining lands. Its sides and top were made of flat stones laid dry, without cement or mortar, and its bottom was of boards upon which the walls rested. It was neither intended nor suitable for the reception and discharge of house sewage. The defendant had never acquired from any person the right to construct it, but the then owner of the lot was assessed for a portion of the cost of construction. The plaintiff's grantor had made a connection with this sewer and the cellar of the house by a tile drain. The plaintiff purchased the premises in 1881, some years after the sewer had been constructed and the connection made with it by the tile drain. The house was used as the home of the plaintiff and her family. Some years afterwards the defendant caused to be constructed in another and higher part of the city a system of sewers for carrying away the general sewage of houses and stables, and caused them to be discharged into the dry stone sewer or drain upon the plaintiff's premises, at a point just above the same. The sewer across the plaintiff's lot, which has been referred to, was used for this purpose down to the year 1893, when an adequate sewer was constructed by the defendant along the route of the old drain. Before this change had been made the condition of things described existed, and at times of continued rains and heavy showers sewage was forced into the cellar from the old dry stone sewer, and water charged with sewage would rise therein to the height of from one to four feet, and upon the recession of the water a deposit of sewage would be left which emitted very offensive odors, permeating all the rooms of the house, rendering them damp and unwholesome.

The plaintiff complained of the condition of the house to the common council and to the board of health of the city, and the board of health adopted a resolution to the effect that the sewer was a nuisance and that the common council be requested to remedy it. The latter, by resolution, directed the city surveyor to report upon a plan for the sewage of the territory affected by the nuisance. In September, 1889, the

city surveyor reported a suitable plan to dispose of the sewage affected by the nuisance, but nothing was done by the defendant in regard to it until about the date above referred to, and during this time sewage was permitted to be discharged as before.

The plaintiff's daughter had no legal or equitable estate in the premises, but merely resided there with her mother at the family home. In the latter part of 1891 she was taken ill, and died in May, 1892. About a week before her death occurred the family moved out of the house. The evidence tended to show that the health of the other members of the family had been affected, but after leaving the premises they had recovered. A physician who attended the deceased testified that her illness and death were caused by her sanitary surroundings.

At the close of the evidence the defendant's counsel moved the court for a direction of a verdict in its favor, upon various grounds, among which were the following: That no negligence had been shown, or any which was the proximate cause of the death; that the deceased did not own any property affected by the sewer; that the plaintiff could have abated the nuisance by disconnecting the house drain from the sewer; that the defendant owed no duty to the deceased, and that her death was caused by tuberculosis, which is a disease not communicated by sewage. The motion was granted, and the exceptions taken in behalf of the plaintiff were directed to be heard in the first instance at the General Term.

*L. A. Pierce* for appellant. The trial court committed no error in directing a verdict for the defendant at the close of the evidence, and the Appellate Division erred in granting a new trial herein. (*Searing* v. *Vil. of Saratoga Springs*, 39 Hun, 307; *McCaffrey* v. *City of Albany*, 11 Hun, 613; *Matter of Rhinelander*, 68 N. Y. 105; *Kosmak* v. *Mayor, etc.*, 53 Hun, 329; 117 N. Y. 361; Jones on Neg. § 155; *Seifert* v. *City of Brooklyn*, 101 N. Y. 136; *Hardy* v. *City of Brooklyn*, 90 N. Y. 435; *R. W. L. Co.* v. *City of Roch-*

*ester*, 3 N. Y. 463 ; *Byrnes* v. *City of Cohoes,* 67 N. Y. 205 ; *Munk* v. *City of Watertown*, 67 Hun, 261 ; *Noonan* v. *City of Albany*, 79 N. Y. 470.)

*Frank C. Cushing* for respondent. The defendant or its authorized official representatives were guilty of gross and culpable negligence in the matters complained of in reference to the premises, which were the home of the intestate, by reason of which her home was made unwholesome and dangerous to human life. (*Seifert* v. *City of Brooklyn*, 101 N. Y. 136 ; *R. W. L. Co.* v. *City of Rochester*, 3 N. Y. 463 ; *Byrnes* v. *City of Cohoes*, 67 N. Y. 204 ; *Hardy* v. *City of Brooklyn*, 90 N. Y. 435.) It is no defense to the charge of negligence on the part of the defendant to say that the old stone drain ran through private property, which had not been appropriated by the city by purchase or condemnation proceedings so as to give it the right to enter and repair, so long as the city continued to use it as a conduit for the sewage gathered by the other sewers referred to, especially after notice that it was insufficient and unsafe as such conduit, and that such use of it was productive of injury to private persons. (*Thomas* v. *Henges*, 131 N. Y. 453 ; *Seifert* v. *City of Brooklyn*, 101 N. Y. 136 ; *Hardy* v. *City of Brooklyn*, 90 N. Y. 435 ; *Noonan* v. *City of Albany*, 79 N. Y. 470 ; *Munk* v. *City of Watertown*, 67 Hun, 261 ; Dillon on Mun. Corp. § 1046.) The question as to whether the intestate was free from contributory negligence was a question for the jury under the facts and circumstances of this case. (*Spaulding* v. *Jarvis*, 32 Hun, 621 ; *Munroe* v. *T. A. R. R. Co.*, 18 J. & S. 114 ; *Greany* v. *L. I. R. R. Co.*, 18 Wkly. Dig. 463 ; *Maho* v. *B. R. R. Co.*, 104 Mass. 137 ; *Campbell* v. *N. Y. C. & H. R. R. R. Co.*, 19 N. Y. S. R. 659 ; *Near* v. *D. & H. C. Co.*, 32 Hun, 557.) The rule established by the Appellate Division in this case that the injury which caused the death of the intestate was one upon which she could have maintained an action but for death is clearly justified by the striking facts of the case, and the appellant's con-

tention against it cannot prevail. (Code Civ. Pro. § 1902; *Hughes* v. *City of Auburn*, 21 App. Div. 311.)

O'Brien, J. The plaintiff seeks in this action to recover the damages resulting from the death of her daughter, a young girl, about twenty-two years old at the time of her death, in the month of May, 1892. She died from a disease which one of the physicians described as catarrhal pneumonia, caused or aggravated by the unwholesome atmosphere of the house where she lived with her mother. It is alleged that in consequence of offensive air and dampness in the house, caused by sewage entering the cellar from the drains and sewers constructed by the defendant, the deceased contracted the disease from which she died, or that it was so aggravated from these causes that death resulted. The facts have already been stated, and they need not be repeated here. They show that in November, 1881, the plaintiff purchased and went into possession of a frame dwelling house in Auburn with her family including this daughter, then about eleven years old. The lot on which the house stood was about four rods wide and ten deep. At that time and for many years before there had been about six feet under the surface of the soil of the lot what is called a stone drain or dry stone sewer connected with the general drainage system of the city. This drain had been built across the private lot by the city and, it is claimed, without having acquired any right from the owner, though it appears he contributed to the expense by payment of an assessment on the property and made a connection into it from the cellar of the house by means of a tile drain. This was the situation when the plaintiff purchased the house and moved into it. Subsequently the city greatly enlarged the drainage area which was originally intended to be drained by this sewer and by this action as well as by neglect to change or enlarge the sewer the city sewerage was forced into the cellar which produced the unhealthy condition of the house described.

We must assume in the present condition of the record that

the death of the plaintiff's daughter is traceable to the neglect of the defendant in failing to correct the causes which rendered the plaintiff's house unwholesome. The question will then arise whether that is a sufficient legal basis for the statutory action for damages resulting from the death, and further, whether such neglect to observe sanitary rules can be said in such cases to be the natural and proximate cause of death within the meaning of the rule of liability for negligence.

The right of the plaintiff to maintain this action depends upon the right of the deceased herself to maintain it had she survived the sickness resulting in her death, and this suggests the inquiry whether an individual who has suffered from disease, superinduced by the neglect of the authorities of a city or village to observe sanitary laws in the construction or maintenance of a system of sewerage, can recover damages for the injury from the municipality. If one member of a family can, so can every member, and if one family may, so may every family, and every person who can give proof enough to carry the case to the jury. It matters not what the disease may be or the cause, so long as it may be traced by proof to some act or neglect on the part of the municipal authorities. There are few communities where places or conditions may not be found that generate disease, and if the municipality may be charged with the results, traceable to these conditions, it is indeed subject to a liability more serious and far-reaching than has heretofore been recognized.

The progress made in recent times in sanitary science has, doubtless, done much to stimulate and develop this idea. It is comparatively easy for the mind to reach the conclusion that the remedies of the law should always keep pace with modern progress in everything that concerns the welfare of the individual, and, in a certain sense, that notion may be quite correct. But advances in that direction, when deemed necessary or healthful, must be the work of legislation, since the courts can only apply to new conditions old and settled principles, and in this process of development a point is soon reached where the power of the court ends and the duty of

the legislator begins.   There is no statute that I am aware of
that would authorize an action against the defendant by the
deceased on the facts disclosed by this record had she lived.
If an individual injured by disease produced by the acts or
neglect of a city, such as are stated in the complaint, can
recover damages at all, it must be upon some principle of the
common law; and had it been suggested half a century ago
that such a principle existed, the assertion would have been
received with some surprise.   In the form in which this case
comes here, there is ample room to urge in argument elements
of individual hardship well calculated to disturb the mind and
divert it from the questions of law that underlie the action.
On the principle that there can be no wrong without a remedy,
courts are sometimes astute to discover grounds for relief in
cases of this character, that, when applied as general princi-
ples to like cases, are found to be exceedingly inconvenient, if
not untenable, and, hence, very frequently, have to be distin-
guished, modified or entirely abandoned.   The principle upon
which the judgment in this case rests is that an individual
who has suffered from disease, caused by the neglect of a city
to observe sanitary laws with reference to its sewer system,
may recover damages from the city.   This principle, if sanc-
tioned and applied generally to all cases coming within its
scope, cannot fail to produce evils much more intolerable than
any that can possibly arise from such acts of omission or com-
mission as the plaintiff states as the basis of this action.   It
must necessarily become the prolific parent of a vast mass of
litigation which the municipality can respond to only by tax-
ation, imposed alike upon the innocent and the guilty.   The
arguments to sustain such a principle are evidently based upon
a misconception of the relations that exist between the
individual and the city.   The latter is but a creature of
the state, engaged in exercising some of the functions of
government in a limited locality, not for any private pur-
poses, but solely for the public good.   It is unfortunately
true that governments, both general and local, have in all ages
of the world inflicted upon the communities whose interests

they had in charge the most grievous wrongs and calamities. Wars, pestilence and famines innumerable, besides almost every other evil that has afflicted mankind, may be traced directly to the neglect or wrongdoing of persons exercising public authority, but no system of jurisprudence has yet recognized the right of the individual injured by such acts or neglect to compensation in damages from the government in consequence of such neglect or wrongdoing. A municipal corporation is nothing more than an instrumentality of the state for the purpose of local government, exercising delegated powers, which the state itself can exercise and may withdraw at pleasure. It is difficult to perceive how the body politic and corporate which we call a city can be liable to an individual for such acts or neglect as the record discloses as the foundation of this action unless the state itself would be liable in the exercise of the same powers for the acts or neglect of its officers of the same character. The state may resume the powers delegated, and could it then be said that it would be liable to an individual who had suffered from disease in consequence of neglect to enact or observe sanitary rules? The remedy for most of the evils incident to the exercise of governmental power, whether in the state itself or in localities, is to change the administration. The law in most cases must proceed upon the principle that it is wiser and better for the members of a political community, general or local, to endure some of the evils that they have rather than fly to remedies such as are invoked in this case that are certain in the end to bankrupt the treasury and involve them in endless strife and litigation.

I cannot perceive that the plaintiff's case is helped in the least by the fact that the sewer was originally constructed across the lot on private property without right or authority. Indeed that fact, if important at all, tends to show that she acquiesced in the situation, since, if it be true that the sewer was built on the land without right, she could have enjoined its use by the city or closed it entirely. The probability is that her grantor, who contributed to the expense of constructing it, in some way promoted the action of the city in order to

secure drainage for his cellar, and the plaintiff, by her pur-
chase and occupation of the house as she found it, succeeded
to this situation. (*Searing* v. *Vil. of Saratoga Springs*, 39
Hun, 307.) It is doubtless true that a city may not conduct
sewage into the house or upon the premises of an individual,
and, if it does, is responsible to him in damages for the trespass
or the nuisance. But that is an injury to property for which
the owner alone may demand redress, and, since in this case
the deceased was not the owner or in possession of the house,
but merely a member of her mother's family, she had no right
of action for the trespass. (*Kavanagh* v. *Barber*, 131 N. Y.
211.) For the personal suffering incident to sickness caused
by the defendant's neglect of sanitary precautions to guard
against disease, she would have no remedy except such as was
common to every other member of the community who was
similarly afflicted. In the construction and maintenance of a
sewer or drainage system a municipal corporation exercises a
part of the governmental powers of the state for the customary
local convenience and benefit of all the people, and in the exer-
cise of these discretionary functions the municipality cannot be
required to respond in damages to individuals for injury to
health, resulting either from omissions to act or the mode of
exercising the power conferred on it for public purposes to be
used at discretion for the public good. I have attempted to
state some of the reasons that underlie this principle and their
application to this case with the evil results that must follow
any departure from it.

The principle is sanctioned by the highest authority in this
and other jurisdictions. Where a fire insurance company was
compelled to pay a loss for property destroyed by fire which
it had insured, it sued the village where the property was to
recover the damages resulting from the wrongful and negli-
gent acts of the corporation in omitting to keep its water
works and fire appliances in proper condition, and to employ
competent men to manage the same, this court held that the
grant of power to the village to do all these things was made
in its public, municipal or political capacity, and that it could

14

not be held liable to respond in damages for any non-user or mis-user of such powers. (*Springfield Fire & M. Ins. Co.* v. *Village of Keeseville*, 148 N. Y. 46.)   The principles so well stated in the opinion in that case apply with full force to the one at bar. The obligation of a municipality to observe sanitary precautions against disease in the construction or maintenance of a sewer system cannot be greater or different from the obligation or duty to provide safeguards against the calamity of fire.

Where a private party sued a city for damages arising from the creation of a nuisance by the city upon his premises in constructing a sewer system with so narrow an outlet that the sewage was set back into the plaintiff's cellar through a drain which he had constructed by permission of the city to connect with the sewer, it was held that the action could not be maintained. (*Buckley* v. *City of New Bedford*, 155 Mass. 64.) There the plaintiff sought only to recover for the damage to the realty and not for any injury to health, and, hence, the principles upon which the decision proceeded apply with the greater force to the present controversy.

Where an insane person was injured in an institution maintained by the county for the care of the insane, through the alleged negligence of some of the officers and servants of the county in charge, it was held that the county was not liable upon the principle which exempts municipal corporations from liability for neglect in the non-user and misuser of powers delegated by the sovereign power for the public benefit. (*Hughes* v. *County of Monroe*, 147 N. Y. 49.)   A more diligent examination would doubtless discover numerous other cases that would furnish a complete answer to the plaintiff's contention, which, it must always be remembered, is that a city is liable in damages to an individual injured, or suffering loss or damage by disease caused by the neglect of the city authorities to observe proper sanitary precautions in the construction or maintenance of its sewer system, since that is the only ground upon which the deceased could rely had she survived and brought the action herself.

A municipality, like an individual, is responsible for wrong-

doing resulting in injury to property when the owner asserts such a claim, and to the public for personal injuries chargeable to neglect in the exercise of its powers and duties over streets and the like, but in the latter cases the liability rests upon some positive duty enjoined. It is bound to use reasonable care to the end that highways may be safe, but no positive duty rests upon it to construct or maintain a system of sewers for the protection of health. It may have extensive powers in that respect, but their exercise rests largely in the discretion of the authorities, and for an omission to act at all, or for some action that may appear to be unwise, or even negligent, where there is no actual invasion of property rights, but merely a failure to accomplish the desired end in the promotion or protection of health, the individual has no right of action.

Whether, under any circumstances, death from disease can be held to be the natural or proximate result of such wrong or neglect as the defendant is charged with in this case is a question not argued. It has been held that damages for injury to health and business resulting from a defective sewer may be included in an action by the owner of a house against a city, negligently causing leakage from a sewer to enter the cellar. (*Allen* v. *City of Boston*, 159 Mass. 324.) But the plaintiff does not bring this action in her right as owner, but as the personal representative of her deceased daughter to recover the damages to the estate of the deceased under the statute. She can, therefore, assert no right that the deceased herself could not have asserted had she lived. The statute which permits actions for damages by reason of death caused by the wrongful act, neglect or default of another has no application to an action against a city by the representatives of one who died from disease superinduced by the neglect of sanitary precautions on the part of the public authorities in the construction or maintenance of a sewer system.

The order of the Appellate Division should be reversed and that entered upon the decision at the trial affirmed, and the defendant should have judgment on the verdict, with costs.

All concur, except GRAY and BARTLETT, JJ., dissenting.

Order reversed, etc.