CURTIS E. McCOMBS, Administrator of the Estate of ERIC WOOD Mc-
COMBS, Deceased v. CITY OF ASHEBORO, a Municipal Corporation

No. 6919SC402

(Filed 22 October 1969)

**1. Municipal Corporations § 21— governmental immunity — construction of sewerage system**

A municipal corporation is performing a governmental function when engaged in construction of a sewerage system and is not liable for personal injuries resulting from the alleged negligent acts of its employees in such construction, notwithstanding the municipality charges for sewage and sanitary services which it furnishes its citizens.

**2. Municipal Corporations § 12— governmental immunity — profitable activity**

A municipality will not lose its governmental immunity solely because it is engaged in an activity which makes a profit, the test being whether the act is for the common good of all without the element of special corporate benefit or pecuniary profit.

**3. Negligence § 51— attractive nuisance**

The attractive nuisance doctrine is an exception to the general rules applicable to liability of owners or occupants for injuries sustained by others on their premises.

**4. Negligence § 51— attractive nuisance — mere attractiveness**

Mere attractiveness of premises to children will not bring a case within the doctrine of attractive nuisance.

**5. Municipal Corporations §§ 12, 21; Negligence § 51— tort liability — sewerage system construction — allegations of profit — sufficiency of complaint — attractive nuisance**

In this action for the wrongful death of a six-year-old child who was killed when an open ditch dug by municipal employees during construction of a sewerage system collapsed while the child was playing therein, it was alleged that defendant municipality "was engaged in the business of selling and providing sanitary sewage facilities to various purchasers throughout the city at a profit for pay," and that municipal employees had been negligent in failing to erect barricades, fences or other warning devices along the entire length of the open ditch, in failing to shore up the walls of the ditch, and in creating an attractive nuisance. *Held:* Assuming that the allegations relating to profit were sufficient to save the complaint from demurrer on the ground of governmental immunity, the complaint is subject to demurrer for failure to state a cause of action on grounds that there are no facts alleged constituting negligence on the part of defendant and that the doctrine of attractive nuisance is inapplicable, defendant municipality having no duty to place a fence the entire length of the ditch or to shore up its sides, and an open excavation not being an attractive nuisance.

Appeal by plaintiff from *Crissman, J.,* 7 April 1969 Session, Randolph County Superior Court.

This is a civil action to recover damages for the alleged wrongful death of plaintiff's intestate.

The complaint alleges, in substance except where quoted, that defendant is a municipal corporation which did not, at the time of the death of plaintiff's intestate, have municipal immunity in a tort action. The defendant, "in exercise of its proprietary powers as a municipal corporation," did, on and before 17 March 1964, maintain sanitary facilities for the residents of the City of Asheboro and owned "certain sewage facilities including sewage lines and treatment plants". That defendant on said date charged for such sewage and sanitary service so furnished the citizens of the city and was in the business of selling and providing sanitary sewage facilities "at a profit for pay" and on 17 March 1964 had exclusive control and supervision of the sewage ditch on Westwood Drive in Asheboro. Defendant, on 17 March 1964, was in the process of installing a sewer line on the eastern margin of Westwood Road. The ditch ranged in depth from 10 to 14 feet, was open for a distance of 150 feet or more, and pipe was laid ready to be covered. Defendant had been operating a rotary wheel type ditchdigger in the construction of the ditch until a stump was encountered under the roadbed, at which point a backhoe was brought in and digging was continued for several additional feet. The area which was dug by the backhoe was approximately 250 feet from the home of the plaintiff's intestate. Defendant's workmen left the project about 4 o'clock p.m. on 17 March 1964. There was a barricade approximately eight feet wide and one smudge pot on the north end of the excavation and a barricade approximately eight feet long and one smudge pot at a point approximately 200 feet south of the "open excavation". There were "no barricades, fences, or warning lights of any type installed by the defendant along the entire length of the open ditch line." Plaintiff's intestate, a six-year-old boy, was playing outdoors about one-half hour after the workmen left. A short while later, "plaintiff's intestate got down in the said ditch which had been dug by the workmen of the defendant, City of Asheboro, and the ditch collapsed and a large wedge of pavement fell on plaintiff's intestate while he was in the ditch, and as a result of the falling in of the ditch and pavement in the ditch, the plaintiff's intestate was killed instantly." The death of plaintiff's intestate was proximately, solely, and directly caused by the negligence of defendant in that:

"(A) The defendant permitted the ditch to stand without proper barricades and devices to protect persons, particularly the plaintiff's intestate, a child of tender years, from playing in the same and did neglect to leave the premises on this date and

at this time in a proper and safe condition and properly protected by barricades and fences.

(B)  In that the defendant failed to exercise due care to see that the pavement was shored up or braced in some manner to prevent it from falling into the ditch which had been excavated by the defendant.

(C)  In that the defendant constructed and permitted to be maintained this ditch which constituted an attractive nuisance to children and particularly plaintiff's intestate, and because of the dangerous and potentially dangerous condition and because of the nature of the excavation, the defendant knew or should have known, and in the exercise of reasonable caution and prudence would have known, that children, particularly of tender years, would be likely to play in the ditch and that permitting a condition such as this to exist constituted a hazard for plaintiff's intestate by virtue of constituting an attractive nuisance which was inherently dangerous.

(D)  In that the defendant failed to exercise commensurate care with the danger arising from the excavation of deep ditches under the exclusive control and supervision of the defendant in residential neighborhoods for children who are likely to play in or about the project, particularly after the workmen of the defendant had left the premises in such conditions that serious and fatal injuries might arise therefrom."

Defendant demurred *ore tenus* to the complaint for that it failed to state a cause of action for the following reasons: 1. Defendant in the construction of a sewer line was exercising a governmental function and is immune from any tort action. 2. (a) There are no facts alleged which set forth any negligence on part of defendant, (b) plaintiff has attempted to allege a cause of action based on the doctrine of attractive nuisance which doctrine is not applicable.

The court sustained the demurrer and gave plaintiff leave to amend. By amendment plaintiff added to his complaint an allegation that each barricade consisted of a "saw horse"; that in opening the ditch the defendant cut vertical walls and piled the dirt therefrom along and close to the northern side of the ditch so that the weight of the dirt exerted pressure downward; that the dirt along the sides was porous and loose; that defendant failed to brace or shore up the walls in any way when it knew or should have known that the walls would be likely to cave in and injure someone; that defendant had been constructing the ditch along and within the

right-of-way of Westwood Road for several days and one or more persons had informed the city, through its agents, that numerous small children were accustomed to playing in and about the ditch, but the defendant failed to take any action to secure the open, deep ditch.

Defendant again filed demurrer upon the same grounds and filed answer admitting there were no barricades or fences installed along the entire length of said project but averring that proper and appropriate barricades were erected, denying negligence, averring that plaintiff's intestate and another child entered the ditch although they were warned on the immediate occasion not to, that the child was playing in the vicinity of the ditch a considerable distance from his home with express consent of plaintiff and the adult person employed as a domestic by plaintiff, that plaintiff's intestate was a trespasser, and setting up the plea of contributory negligence on the part of plaintiff and his intestate.

After hearing on 7 April 1969, the demurrer was again sustained. Plaintiff excepted and gave notice of appeal.

*Coltrane and Gavin, by W. E. Gavin and Hugh R. Anderson, for plaintiff appellant.*

*Miller, Beck and O'Briant, by Adam W. Beck, for defendant appellee.*

Morris, J.

Defendant's grounds for demurrer are twofold: The first ground is that the plaintiff's alleged cause of action arises out of the alleged negligence of defendant in the construction of a sewer line along a city street and that this is a governmental function for which it is not subject to tort liability. The second basis for demurrer is that the complaint fails to state a cause of action for the reason that there are no facts alleged constituting negligence on the part of the defendant and that the doctrine of attractive nuisance is not applicable.

With respect to the first ground, plaintiff contends and alleges that the defendant was engaged in a proprietary function in the construction of a sewer line. The question of a municipality's governmental immunity from tort liability has often been discussed by our Supreme Court. A list of situations in which the municipality has been held immune by reason of its being engaged in a governmental function can be found in *Rhyne v. Mount Holly*, 251 N.C. 521, 112 S.E. 2d 40 (1959). Justice Brown, in *Metz v. Asheville,*

150 N.C. 748, 64 S.E. 881 (1909), distinguished between governmental and proprietary functions thusly:

> "When power conferred has relation to public purposes and for the public good, it is to be classified as governmental in its nature and appertains to the corporation in its political capacity. But when it relates to the accomplishment of private purposes in which the public is only indirectly concerned, it is private in its nature, and the municipality, in respect to its exercise, is regarded as a legal individual. In the former case the corporation is exempt from all liability, whether for nonuser or misuser; while in the latter case it may be held to that degree of responsibility which would attach to an ordinary corporation."

While the rule may be simply stated, application of the definition to particular situations is not so simple. The line between powers classed as governmental and those classified as proprietary is none too sharply drawn and seems to be subject to a change in position as society changes and progresses and the concepts of the functions of government are modified.

In actions brought to recover damages for injury to property and person by reason of the alleged negligent maintenance of a sewerage system, our Court has allowed recovery for damage to property on the theory of the creation of a nuisance and the taking of property. *Hines v. Rocky Mount,* 162 N.C. 409, 78 S.E. 510 (1913); *Moser v. Burlington,* 162 N.C. 141, 78 S.E. 74 (1913); *Williams v. Greenville,* 130 N.C. 93, 40 S.E. 977 (1902); *Downs v. High Point,* 115 N.C. 182, 20 S.E. 385 (1894). However, recovery for illness or death resulting from the negligent maintenance of sewerage systems was specifically denied and evidence with respect thereto admitted only for purpose of proving existence of the nuisance. In *Metz v. Asheville, supra,* plaintiff sought to recover for the death of his intestate from typhoid fever allegedly communicated by the condition of Reed Branch which ran near the house in which plaintiff's intestate resided and into which the defendant's public sewerage system emptied. Plaintiff contended the defendant should have had the sewage empty into French Broad River. The Court, apparently basing its decision on the exercise of the police power, held the establishment of a free public sewer system to be a governmental function and said:

> "Certainly, nothing is more necessary to the health of a city than that its filth should be removed and its area well drained. That the establishment of a public sewer system is an exercise

of a governmental function is recognized by all the authorities
I have quoted."

In *Hines v. Rocky Mount, supra,* an action based on negligent
maintenance of the sewer system, the Court quoted with approval
the following statement of O'Brien, J., in *Hughes v. Auburn,* 161
N.Y. 96, 55 N.E. 389 (1899):

> "In the construction and maintenance of a sewer or drainage
> system, a municipal corporation exercises a part of the gov-
> ernmental powers of the State for the customary local con-
> venience and benefit of all the people, and in the exercise of
> these discretionary functions the municipality cannot be re-
> quired to respond in damages to individuals for injury to health,
> resulting either from omissions to act or the mode of exercis-
> ing the power conferred on it for public. purposes to be used at
> discretion for the public good . . ."

Justice Seawell, in *Plant Food Co. v. Charlotte,* 214 N.C. 518,.
199 S.E. 712 (1938), commenting on the *Metz* case, noted that re-
covery was denied "on the ground that the commissioners of the
town, in the construction and operation of the sewerage plant, were
in the performance of a purely governmental function" and noted
further that under the general powers given to cities and towns to
construct and operate sewer systems, it is doubtful whether it is
necessary to invoke the police power to sustain such authority.

[1]     However, we find no case presenting squarely to the Court
the question of whether a municipality can be required to respond
in damages for personal injuries resulting from the alleged negligent
acts of its employees in the *construction* of a sewer line. In *Insur-
ance Co. v. Blythe Brothers Co.,* 260 N.C. 69, 131 S.E. 2d 900 (1963),.
an action for damage to property resulting from dynamiting in con-
structing a sewer outfall for the City of High Point, the defendant
by answer contended that the City of High Point, if a party, would
be immune from liability under the doctrine of governmental im-
munity and this immunity would enure to its benefit. The Court,
speaking through Bobbitt, J., noting that a determination of the
question of governmental immunity was not necessary to the dis-
position of the appeal, said:

> "There is a conflict of authority in other jurisdictions as to
> whether a municipal corporation is performing a governmental
> function when engaged in the *construction* of a sewerage sys-
> tem. 63 C.J.S., Municipal Corporations § 1049; 38 Am. Jur.,.
> Municipal Corporations § 585; McQuillin on Municipal Cor-

porations, 3rd Edition, Vol. 18, § 53.125, and cases cited. No decision of this Court determinative of the precise question has come to our attention."

The Court has held that garbage removal by the municipality is a governmental function. *James v. Charlotte,* 183 N.C. 630, 112 S.E. 423 (1922); *Snider v. High Point,* 168 N.C. 608, 85 S.E. 15 (1915).

[1] It appears that the courts are sharply divided as to whether the construction of a sewerage system constitutes a governmental function or a proprietary function. However, the weight of recent authority seems to favor the theory of a governmental function. e.g., 63 C.J.S., Municipal Corporations, § 873, p. 253; 61 A.L.R. 2d 881. See *City of Scottsdale v. Municipal Court of Tempe,* 90 Ariz. 393, 368 P. 2d 637 (1962); *Foster v. Crowder,* 117 Ga. App. 568, 161 S.E. 2d 364 (1968); *Smith v. Kansas City,* 158 Kan. 213, 146 P. 2d 660 (1944); *Trapani v. Parish of Jefferson,* (Ct. App. Louisiana 4th Cir.) 180 So. 2d 850 (1965); *Safransky v. City of Helena,* 98 Mont. 456, 39 P. 2d 644 (1935); *Bengivega v. Plainfield,* 128 N.J. Law 418, 26 A. 2d 288 (1942); *Hamilton v. Bismarck,* 71 N.D. 321, 300 N.W. 631 (1941); *State ex rel Gordon v. Taylor,* 149 Ohio St. 427, 79 N.E. 2d 127 (1948); *Ratliff v. City of Akron,* 157 N.E. 2d 151 (1959); *Bowie v. City of Houston,* 152 Tex. 533, 261 S.W. 2d 450 (1953). We are persuaded to the view that the construction of a sewerage system is a governmental function by what we consider to be the better reasoning. Certainly, the preservation of the public health is one of the duties devolving upon the State as a sovereign power and in the discharge of this duty the State is acting strictly in discharge of one of the functions of government. Similarly, a municipal corporation in the discharge of the duty of preservation of the public health is exercising a purely governmental function affecting the welfare not only of citizens of the corporate community but of the citizens of the State generally, all of whom have an interest in the prevention of the spread of infections or contagious disease. If the reasoning advanced in the cases, *James v. Charlotte, supra,* and *Snider v. High Point, supra,* was valid as to garbage collection more than forty years ago, it is even more apposite today in the case of sewage. The use of modern devices and appliances results in the disposal of garbage as well as human excretion and waste into sewer lines. In today's society people are compelled to live in close proximity. Adequate sewage disposal is no longer merely desirable. It is an absolute necessity.

Nor do we think the fact that "defendant charges, and did on

March 17, 1964, for such sewage and sanitary service so furnished the citizens of the City of Asheboro" removes the defendant city from the protection from liability. This question was raised in *James v. Charlotte, supra.* There the plaintiff contended that the city was not protected from liability because it charged a fee for removal. The Court held the principle which applied in cases where municipal corporations enter into the business of selling light and power to the citizens for profit was not applicable, because the City of Charlotte was merely making a charge covering the actual expense of removing garbage and refuse in discharge of a duty primarily incumbent on the individual citizen and occupant of the property. The statute (C.S. 2799 — now G.S. 160-233), under which the regulations of the city were made, provided that the city could charge for garbage removal "the actual expense thereof". We note that under Part 7, Article 18, and Article 34A, Chapter 160, General Statutes of North Carolina, municipalities are authorized to make charges for sewerage system connections and for use of services and facilities furnished by sewage disposal system at least sufficient at all times to pay expenses of operating, managing and repairing the system and to pay principal and interest on any bonds issued to pay the cost of its construction, extension, enlargement, or improvement. "A small charge made to help pay the expenses of carrying on a work purely governmental in character will not transform it into a profit-making enterprise." 63 C.J.S., Municipal Corporations, § 750, p. 39.

**[5]**    Plaintiff has, however, alleged that the defendant "was engaged in the business of selling and providing sanitary sewage facilities to various purchasers throughout the city at a profit for pay . . ." and contends that this allegation saves the complaint from demurrer.

**[2]**    As has been stated frequently by courts of other jurisdictions, actual profit is not the test, and the city will not lose its government immunity solely because it is engaged in an activity which makes a profit. *Beard v. City and County of San Francisco,* 79 Cal. App. 2d 753, 180 P. 2d 744 (1947); *Watkins v. City of Toccoa,* 55 Ga. App. 8, 189 S.E. 270 (1936); *Hahn v. City of Ortonville,* 238 Minn. 428, 57 N.W. 2d 254 (1953); *Huffman v. Columbus,* 51 N.E. 2d 410 (1943); *Griffin v. Salt Lake City,* 111 Utah 94, 176 P. 2d 156 (1947); *Marshall v. Brattleboro,* 121 Vt. 417, 160 A. 2d 762 (1960). "The underlying test is whether the act is for the common good of all without the element of special corporate benefit, or, pecuniary profit." McQuillin, Municipal Corporations, 3d ed., § 53.29, p. 192. This test was applied by the Supreme Court in *Glenn v. Raleigh,*

246 N.C. 469, 98 S.E. 2d 913 (1957), and 248 N.C. 378, 103 S.E. 2d 482 (1958), the opinion in the first appeal having been written by Parker, J. (now C.J.), and in the second appeal by Johnson, J. Plaintiff was injured while with his schoolmates at a picnic supper at Pullen Park. The complaint alleged that the City of Raleigh maintained, managed, controlled, and operated for profit a public recreation ground known as Pullen Park. The evidence of plaintiff tended to show that the net revenue received by the city from the operation of the park for the fiscal year in question was $18,531.14 which was used by the city for the capital maintenance of the park area, building items, paying salaries, buying fuel, etc. The Court held that, for the purposes of the consideration of a motion for judgment of nonsuit, this item of $18,531.14 constituted receipts over and beyond incidental income and "imports such a corporate benefit or pecuniary profit or pecuniary advantage to the City of Raleigh as to exclude the application of governmental immunity."

[5] Conceding, *arguendo*, that this allegation is sufficient to save the complaint from demurrer on the ground of governmental immunity, we are of the opinion that the complaint must fail on the second ground relied upon by defendant.

Plaintiff does not argue this ground of demurrer in his brief, apparently assuming that the allegations of negligence are sufficient. We do not agree.

[3] The attractive nuisance doctrine, is, of course, an exception to the general rules applicable to liability of owners or occupants for injuries sustained by others on their premises. There is a wide diversity of judicial opinion with respect to the acceptance or rejection in whole or in part of the doctrine. 65 C.J.S., Negligence, § 63(72), p. 809. In 65 C.J.S., Negligence, § 63(76), p. 815, it is stated:

"Generally, the attractive nuisance doctrine is applicable when, and only when, the following elements are present: (1) The instrumentality or condition must be dangerous in itself, that is, it must be an agency which is likely to, or probably will, result in injury to those attracted by, and coming into contact with, it. (2) It must be attractive and alluring, or enticing, to young children. (3) The children must have been incapable, by reason of their youth, of comprehending the danger involved. (4) The instrumentality or condition must have been left unguarded and exposed at a place where children of tender years are accustomed to resort, or where it is reasonably to be expected that they will resort for play or amusement, or for the gratification of youthful curiosity. (5) It must have been reasonably prac-

ticable and feasible either to prevent access to the instrumentality or condition, or else to render it innocuous, without obstructing any reasonable purpose or use for which it was intended."

[4] An extensive discussion of the doctrine is found in the leading case of *Briscoe v. Lighting and Power Co.*, 148 N.C. 396, 62 S.E. 600 (1908). Justice Connor, writing for the Court, quoted from *Kramer v. R. R.*, 127 N.C. 328, 37 S.E. 468 (1900); "These cases are exceptions to the general rule, and went to the very limit of the law. Mere attractiveness of premises to children will not bring a case within that exceptional doctrine." Justice Connor further wrote:

> "It must be conceded that the liability for injuries to children sustained by reason of dangerous conditions on one's premises is recognized and enforced in cases in which no such liability accrues to adults. This we think sound in principle and humane in policy. We have no disposition to deny it or to place unreasonable restrictions upon it. We think that the law is sustained upon the theory that the infant who enters upon premises, having no legal right to do so, either by permission, invitation or license or relation to the premises or its owner, is as essentially a trespasser as an adult; but if, to gratify a childish curiosity, or in obedience to a childish propensity excited by the character of the structure or other conditions, he goes thereon and is injured by the failure of the owner to properly guard or cover the dangerous conditions which he has created, he is liable for such injuries, provided the facts are such as to impose the duty of anticipation or prevision; that is, whether under all of the circumstances he should have contemplated that children would be attracted or allured to go upon his premises and sustain injury."

A general discussion of particular dangers to which the doctrine is or may be applicable in 38 Am. Jur., Negligence, § 151, p. 818, contains this statement:

> "A danger which is not only obvious but natural, considering the instrumentality from which it arises, is not within the meaning of the attractive nuisance doctrine, for the reason that an owner or occupant is entitled to assume that the parents or guardians of a child will have warned him to avoid such a peril. Pits and excavations on land embody no dangers that are not readily apparent to everyone, even very young children. For this' reason, the proprietor is under no obligation, as a rule, to fence or otherwise guard such places, and he will not be liable for injuries to children who may have fallen therein. Nor is the landowner

liable for injuries sustained by earth falling into excavations as a result of the embankment being undermined by children."

The Appellate Court of Indiana refused to apply the doctrine where the defendant had removed a large amount of sand, leaving a hole 100 feet long, 50 feet wide and 10 feet deep, with perpendicular walls, and adjacent to a viaduct on which children were accustomed to play. A nine-year-old boy, who entered the sand hole to play and excavated below the surface, was killed in the cave-in which followed. The Court held that under the circumstances the sand pile did not constitute an attractive nuisance. *Anderson v. Reith-Riley Const. Co.*, 112 Ind. App. 170, 44 N.E. 2d 184 (1942).

The same result was reached in *Johnson v. City of New York*, 208 N.Y. 77, 101 N.E. 691 (1913). There the city was constructing, in a public street, a large sewer laid at a depth of 25 to 35 feet. The trench was about 16 feet wide at the top, leaving a narrow strip of roadway on either side not more than 6 or 7 feet wide. The street was barricaded at each end against vehicular traffic, but the sidewalks were kept open for the use of the abutters and their families and for the children who attended the public school located in the block. A short distance from the school, there was a pile of sand which had been placed there during the course of the work. The pile of sand was about 3 feet high, extended over the sidewalk about 2 feet and out into the street at least 5 feet so that the outer margin of the sand pile was within 1 foot of the trench. Plaintiff, a 12-year-old boy, on his way home from school went upon the pile of sand and sat there playing for a while. When he started to leave, he slid down with the sand into the ditch and was injured. The Court held the doctrine of attractive nuisance not applicable and that the city had no duty to erect a fence around its construction or to keep a watchman there.

[5]   We are of the opinion that the facts alleged here do not "impose the duty of anticipation or prevision" which would require the city to do more than is alleged in the complaint. Municipalities must build sewers and other conduits necessitating the making of excavations. This creates some obvious danger, but we do not categorize it as an attractive nuisance. Nor do we perceive that the city had any duty to place a fence the entire length of the ditch. Neither was there any duty on the part of the city to shore up the sides of the ditch. "The use of property, to which an owner is entitled, should not be encumbered with the necessity of taking precautions against every conceivable danger to which an irrepressible spirit of adventure may lead a child. There is no duty to take precautions where

to do so would be impracticable, unreasonable, or intolerable." 38 Am. Jur., Negligence, § 147, p. 813.

Although the case is one which arouses sympathy, the complaint does not meet the test of legal rules.

Affirmed.

MALLARD, C.J., and HEDRICK, J., concur.