**CITY OF GASTONIA, a North Carolina Municipal Corporation, Plaintiff,**

v.

**BALFOUR BEATTY CONSTRUCTION CORPORATION, INC.,** American Home Assurance Company and Federal Insurance Company, Defendants.

No. 3:99–CV–398.

United States District Court, W.D. North Carolina, Charlotte Division.

Sept. 25, 2002.

P. Marshall Yoder, Thomas L. Ogburn, III, John L. Shaw, Poyner & Spruill, Charlotte, NC, Henry M. Whitesides, Whitesides & Kenny, LLP, GAstonia, NC, Dennis J. Redwing, Gastonia, NC, Ash Smith, City Attorney, Gastonia, NC, for Plaintiff.

Aaron E. Bradshaw, Gastonia, NC, Nathan E. Minear, O'Brien, O'Rourke & Hogan, Maitland, FL, James E. Moye, Moye

O'Brien, O'Rourke, Hogan & Pickert, Maitland, Fl, for Defendants.

Perry R. Safran, Safran Law Offices, Raleigh, NC, for Atlantic Coast Mechanical Inc.

## ORDER

MULLEN, Chief Judge.

### I. INTRODUCTION

THIS MATTER comes before the Court on Plaintiff City of Gastonia's motion for summary judgment and supporting memorandum filed with the Court on May 31, 2002. Defendant and Cross-claimant Balfour Beatty Construction, Inc. (hereinafter "BBCI") filed a response to Plaintiff's motion on July 8, 2002. Gastonia filed a reply to BBCI's response on July 29, 2002.

The original motion for summary judgment requested that this Court find for Plaintiff as a matter of law on three counts (Counts II, IV, and V) of BBCI's counterclaim. Since the original motion, BBCI has moved for voluntary dismissal of Counts IV and V (alleging fraud and negligent misrepresentation, respectively). The Court granted BBCI's motion for voluntary dismissal of these two counts; thus, this Order only addresses Count II of the counterclaim, which alleges intentional interference with contract.

In support of its motion for summary judgment, Gastonia presents three arguments (listed in the order in which the Court will address them): first, Gastonia is protected from BBCI's tort claim by sovereign immunity; second, BBCI's tort claim actually arises out of a contractual dispute and is therefore barred by, what is called in many jurisdictions, the economic loss doctrine; and third, there are not facts in the record from which a reasonable trier of fact could conclude that Gastonia had committed the tort of intentional interference with contract.

### II. SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine issue exists only if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. But the party opposing summary judgment may not rest upon mere allegations or denials, and a "mere scintilla of evidence" is insufficient to overcome summary judgment. *Id.* at 249–50, 106 S.Ct. 2505. Courts, in considering motions for summary judgment, view the facts and inferences in the light most favorable to the party opposing the motion. *Id.* at 255, 106 S.Ct. 2505; *Miltier v. Beorn*, 896 F.2d 848 (4th Cir.1990); *Cole v. Cole*, 633 F.2d 1083 (4th Cir.1980). Summary judgment, consequently, is proper where "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there [being] no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (internal quotations omitted). Summary judgment is also proper where the affirmative defense of sovereign immunity precludes liability. *Board of Governors of the University of North Carolina v. Helpingstine*, 714 F.Supp. 167 (M.D.N.C.1989) (granting summary judgment on the basis of sovereign immunity).

## III. SOVEREIGN IMMUNITY

■ First, the Court will examine Gastonia's argument that it is immune from tort liability under North Carolina's sovereign immunity doctrine. There is no blanket, absolute sovereign immunity for municipal corporations in North Carolina. Rather, immunity for a municipal corporation depends on "the nature of the power that the corporation is exercising." *Steelman v. City of New Bern*, 279 N.C. 589, 592, 184 S.E.2d 239, 241 (1971) (quoting *Moffit v. Asheville*, 103 N.C. 237, 254, 9 S.E. 695, 697 (1885)). The general rule, applicable to the instant case, is that immunity is proper where the municipal corporation is exercising its "governmental" function, rather than performing a task that is merely "proprietary." *Data General Corporation v. County of Durham*, 143 N.C.App. 97, 545 S.E.2d 243 (2001). Gastonia argues that the construction of a water treatment plant, in all its many facets, is a governmental, not proprietary, function. BBCI urges this Court to hold the opposite—that the construction of a water treatment plant, at least that part of the process of construction of a water treatment plant relevant in this case, is an exercise of a municipal corporation's proprietary function not protected from tort liability by sovereign immunity.

The Courts of North Carolina have spent a great deal of time examining the distinction between governmental and proprietary functions. The North Carolina Court of Appeals noted this when it was faced with such a determination in *McCombs v. City of Asheboro*, 6 N.C.App. 234, 170 S.E.2d 169 (1969). That Court opined that in the several attempts the North Carolina Supreme Court had made at delineating this distinction, the results were not (and should not necessarily be) consistent through time. "The line between powers classed as governmental and those classified as proprietary is none too sharply drawn and seems to be subject to a change in position as society changes and progresses and the concepts of the functions of government are modified." *McCombs*, 6 N.C.App. at 238, 170 S.E.2d at 172, *see also Pulliam v. City of Greensboro*, 103 N.C.App. 748, 751, 407 S.E.2d 567, 568 (1991) ("The 'application of the [governmental-proprietary distinction] to given factual situations has resulted in irreconcilable splits of authority and confusion as to what functions are governmental and what functions are proprietary' ") (quoting *Koontz v. City of Winston–Salem*, 280 N.C. 513, 186 S.E.2d 897 (1972)).

The Court notes that since it hears this case under its diversity jurisdiction, it is obliged, under the principles of *Erie Railroad v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), to construe and apply the substantive law of North Carolina. In such a posture, a federal court must "determine the rule that the [state] Supreme Court would probably follow. . . ." *Kline v. Wheels by Kinney*, 464 F.2d 184, 187 (4th Cir.1972). Therefore, to the extent that North Carolina law is unclear or unsettled, the Court must attempt to predict how the North Carolina Supreme Court would rule, were it faced today with a like issue. Because the North Carolina Supreme Court has not gone through the analysis of the governmental/proprietary dichotomy in many years and because the North Carolina case law is inconsistent, this Court will apply the law as it believes the North Carolina Supreme Court would.

It appears to the Court that it is likely that, if faced with this question today, the North Carolina Supreme Court would make its determination primarily based on whether the function claimed to be immune can only be undertaken by a municipal corporation, or rather, whether it is the type of activity which could be under-

taken by an individual or private corporation. *Data General Corporation,* 143 N.C.App. at 105, 545 S.E.2d at 249. "If the undertaking of the municipality is one in which only a governmental agency could engage, it is governmental in nature. It is proprietary and 'private' when any corporation, individual, or group of individuals could do the same thing." *Id.* (quoting *Britt v. City of Wilmington,* 236 N.C. 446, 73 S.E.2d 289 (1952)). The North Carolina Supreme Court would likely not look to the function as a large-scale activity, but would look with particularity at the function. That is to say, a Court should not look at the process of construction of a water treatment plant as a whole, but rather should examine the specific portion of the long process of construction for which immunity is claimed. This reflects the fact that North Carolina courts recognize that certain aspects of an activity can be considered governmental, while other aspects of the same activity are considered proprietary. *Faw v. Town of Wilkesboro,* 253 N.C. 406, 117 S.E.2d 14 (1960). Additionally, there is no reason to believe that the North Carolina Supreme Court would decide that the distinction between governmental and proprietary functions is determined solely based on whether the enterprise is one for which the municipal corporation charges a fee. Instead, that factor goes to the question, described above, of whether the function can only be performed by a municipal corporation.

Gastonia argues that any conduct related to the "health, safety, security or general welfare of its citizens" is governmental and therefore protected by sovereign immunity. But this surely cannot be the case. Such an interpretation would make essentially all conduct by a municipal corporation, as long as it has at least *some* beneficial effect for the population, subject to the protection of sovereign immunity; this would include any conduct where the municipality is functioning primarily as a

market participant. Market participation would likely generate revenue for the city which could fund improvements of services and reduce tax burdens. Such a rule would eviscerate the dichotomy between governmental and proprietary functions established through nearly 120 years of North Carolina precedent. Therefore, this Court cannot say that the North Carolina Supreme Court would interpret the law as Gastonia urges.

The law of North Carolina requires that the Court look with particularity at the specific function alleged to be governmental. It is not enough to say that "construction" of a water treatment plant is governmental. The Court must look at what part of the long process of construction is alleged to be governmental and which parts are alleged to be proprietary. The decision to construct a water treatment plant, the determination of where to locate it, as well as the setting of standards for its capacity and capability are all exercises of governmental function utilizing governmental discretion. How the City of Gastonia conducts its business relationships with contractors and subcontractors is not inherently governmental—such a function requires no exercise of governmental discretion. It is a function that could just as easily be exercised (and, in fact, is routinely exercised) by private corporations and individuals. Therefore BBCI's counterclaims arising out of its business and contractual relationship with Gastonia are not prohibited by sovereign immunity.

## IV. ECONOMIC LOSS DOCTRINE

 In its motion for summary, Gastonia argues that in its counterclaim for intentional interference with contract, BBCI is attempting to transform an essentially contract-law based claim into a tort-law based claim, and that since this is not permitted under North Carolina law the

claim should be disposed of at summary judgment. Gastonia urges this Court to hold that any claims that BBCI might have against it do not fit into one of the narrow exceptions to North Carolina's general rule that "a breach of contract does not give rise to a tort action by the promisee against the promisor." *North Carolina State Ports Authority v. Lloyd A. Fry Roofing Company*, 294 N.C. 73, 81, 240 S.E.2d 345, 350 (1978). BBCI responds that a claim of intentional interference with contract in this case is not barred by the doctrine of economic loss, and should therefore survive summary judgment analysis.

In the *Ports Authority* case, the North Carolina Supreme Court noted that it has allowed some tort actions to arise from what are essentially contractual relationships. *Id.* It then defines the four situations where such a tort action is allowed:

(1) The injury, proximately caused by the promisor's negligent act or omission in the performance of his contract, was an injury to the person or property of someone other than the promisee ...

(2) The injury, proximately caused by the promisor's negligent, or wilful, act or omission in the performance of his contract, was to property of the promisee other than the property which was the subject of the contract, or was a personal injury to the promisee ...

(3) The injury, proximately caused by the promisor's negligent, or wilful, act or omission in the performance of his contract, was loss of or damage to the promisee's property, which was the subject of the contract, the promisor being charged by law, as a matter of public policy, with the duty to use care in the safeguarding of the property from harm, as in the case of a common carrier, an innkeeper or other bailee ...

(4) The injury so caused was a wilful injury to or a conversion of the property of the promisee, which was the subject of the contract, by the promisor ...

*Id.* The Court in that case acknowledged that the enumeration of exceptions may not be exclusive but it enunciated a general rule: North Carolina courts refuse to allow "a tort action [to lie] against a promisor for his simple failure to perform his contract." *Id.* In this case BBCI claims that Gastonia failed to do a number of things required of it by contract and by general principles of contract law. As a result, BBCI claims that it was required to withhold payment to ACM, leading to ACM's refusal to continue performance of its contractual obligations. While it is possible to imagine a situation where the North Carolina Supreme Court would create an additional exception to add to the list in *Ports Authority*, this is not such a situation. Any of the alleged injury to BBCI in this case was caused only by Gastonia's alleged failure to perform its contract obligations. BBCI is requesting that this Court do precisely what the *Ports Authority* case prohibits it from doing.

The Court concludes that North Carolina law bars BBCI's counterclaim for intentional interference with contract under the rule of *Ports Authority* (often described as the "economic loss doctrine"). Therefore, Gastonia's motion for summary judgment on Count II of BBCI's counterclaim is granted.

## V. MERITS OF INTENTIONAL INTERFERENCE WITH CONTRACT CLAIM

■ Even if this Court did not conclude that Count II of BBCI's counterclaim was barred by the rule in the *Ports Authority* case, that claim fails to survive summary judgment on the merits. Gastonia correctly identifies the test for intentional interference with contract in North Carolina: counter-claimant must establish 1) a valid

contract between BBCI and ACM (BBCI's subcontractor) that confers upon BBCI a contractual right against ACM; 2) Gastonia had knowledge of the contract between BBCI and ACM; 3) Gastonia intentionally induced ACM not to perform its obligations to BBCI; 4) Gastonia did so without justification; and 5) ACM's failure to perform resulted in actual Count II of BBCI's counterclaim is HEREBY GRANTED.